Everett, J..
This cause came on for trial on April 4th, 1934, and was submitted on the pleadings and the evidence. The salient facts, as shown by evidence in this case are: That the Lima First American Trust Company was a banking corporation, organized and existing under the laws of Ohio; that its principal office and place of busness is in Lima, Allen county, Ohio; that said bank had a trust department; that said bank was the duly appointed, qualified and acting trustee of the last will and testament of Seth S. Wheeler, deceased, up and until the time of its resignation as such trustee; that after its resignation as trustee the plaintiff, The Huntington National Bank of Columbus, was appointed trustee; that the defendant, Ira J. Fulton, is the duly appointed, qualified and acting superintendent of banks for the state of Ohio; that said trustee, The Lima First American Trust Company, was closed by action of its board of directors and was placed in the hands of a conservator appointed by the superintendent of banks on April 10th, 1933; and that on September 9th, 1933, The Lima First American Trust Company was taken over for liquidation by said superintendent of banks for the state of Ohio and is now in the process of liquidation. It was expressly stipulated and agreed by and between the parties that the facts as alleged in the petition are correct, except as developed by the testimony, and the same agreement was made as to *143 the answer and amended reply, except as to malfeasance and misfeasance.
The court finds from the evidence submitted that on or about February 16, 1933, the Lima First American Trust Company as such trustee of said estate sold bonds belonging to the estate in the amount of $1840.00 principal cash and interest of $26.50 on February 18, 1933; that said sale was made by the Union Trust Company of Cleveland, Ohio, and the Cleveland Trust Company through McDonald, Callahan and Richards, to a purchaser who remitted directly through such agent to the Union Trust Company; that there at that time existed between the Lima First American' Trust Company and the Union Trust Company a relation of debtor and creditor and such sum was passed to the credit of the Lima First American Trust Company; that on the same day that the credit was made by the Union Trust Company of Cleveland, Ohio, to the Lima First American Trust Company, the Lima First American Trust Company entered credit upon its books in its commercial department to the account of the Lima First American Trust Company, as trustee for said estate.
The court further finds that the lowest amount of cash on hand in the Lima First American Trust Company between the time of said sale of bonds on February 18, 1933, to September 9, 1933, the time when said bank went into liquidation, was on April 8, 1933, the sum of $14,489.94.
The court further finds that the total amount of funds of said estate deposited in the Lima First American Trust Company in various accounts was, on February 24, 1933, $1866.50, as receipts from sale of bonds,-and $254.36 from the income cash account, and $413.99 in the savings account, making a total amount of $2534.85. That after the restricted basis there was paid upon trust savings account No. 33126 $8.26, leaving a balance in said account in the sum of $405.73; that there was paid upon the income cash account of $254.34 the sum of $5.09, leaving as a balance in said account the sum of $249.27 and that there is now due and owing the plaintiff as trustee of the Seth S. Wheeler estate from Ira J. Fulton as superintendent of banks of the state of Ohio in charge of the liquidation of *144 the Lima First American Trust Company the sum of $2521.50. The court further finds that the Lima First American Trust Company has deposited with the treasurer of state $100,000.00 in securities as required by law to be held for the protection of creditors of the trust department of said bank; that numerous claims for preference have been filed with the superintendent of banks against the property and assets and funds of the Lima First American Trust Company and that thé time for filing claims by depositors has not elapsed;
The court further finds that the trust agreement under which the Lima First American Trust Company became trustee of the éstate of Seth S. Wheeler expressly provided:
“Said trustee shall keep said estate separate and apart from any other property or monies owned or held by it.”
That said trustee, The Lima First American Trust Company, did not keep the estate of said Seth S. Wheeler separate and apart from the other property or monies held or owned by it; that said trustee mixed the property and monies of said estate with its own property and monies, and that, at the time The Lima First American Trust Company went into liquidation there was on deposit in thé various accounts of The Lima First American Trust Company monies due the estate of Seth S. Wheeler in the sum of $2521.50.
The court further finds that plaintiff has made demand for the payment or turning over of said funds to it by said superintendent of banks, which demand has been refused and that said claim for said funds is a preferred claim against the assets of The Lima First American Trust Company in the hands of the superintendent of banks, and that The Lima First American Trust Company, as trustee of the estate of said Seth S. Wheeler, deceased, is guilty of misfeasance in the handling of the funds of said estate in violation of said trust agreement.
In order to arrive at a conclusion in this case the court has endeavored to examine the history of the question of trustee deposits in banks as enunciated by the various decisions of the courts, and finds that the leading cases are *145 as cited by plaintiff and defendant in their briefs, and are covered by: McDonald v. Fulton, 125 O. S. 507; Fulton v. Gardner, 127 O. S., 77; Ohio State Bank & Truest Co. v. Built-well Tire & Rubber Company, 23 Ohio App., 409; Smith v. Fuller, 86 O. S., 57; Section 710-165, General Code of Ohio.
It was held in the 125 O. S., 507, that Section 710-165, General Code, authorizes a bank organized under the laws of this state, with power of a trust company, to make a general deposit of money received by it as trustee and held temporarily pending investment or distribution, in the commercial or other department of such bank, unless otherwise expressly provided by the trust agreement creating and controlling such trust. It was further held in this case that as to any such funds so deposited the relation of the bank and trustee is as debtor and creditor, and such funds so deposited may be used by the bank in its general business as other assets. It was-further held that the rights of the trustee, with reference to the funds so deposited, are no greater than or different from those of other general depositors, and upon liquidation of the bank they all share proportionately, in the distribution of the assets. The Supreme Court in 127 O. S., 77, follows the rule laid down in the above case.
In the 86th O. S., page 57, the court passes upon the question of whether a fund deposited by a trustee was in violation of his duty. The court, in the fourth syllabus of that case, uses the following language:
“A presumption will be indulged in the absence of proof to the contrary, that the trustee intended to perform and not violate his duty, and that the deposit was intended as a special, and not a general deposit.”
The court then lays down the rule in the fifth syllabus of this case that where funds are so mingled that:
“If it be shown that at all times from the making of the' deposit to the time of the assignment by the bank, there was in its vaults money of amount and value equal to the amount so deposited, a court of equity may' engraft a trust upon such money, and the trustee will become a preferred creditor to the amount of such deposit.”
*146 An examination of Section 710-165, General Code, discloses that the Legislature of Ohio has recognized that the law as it previously existed, as laid down by this section and as passed upon by the court in the above cases, did not properly protect trust funds and repealed and enacted a new section in lieu thereof, effective June 14, 1933, and designated by the same number, which now provides as follows:
“710-165. Mingling of property or securities toith investment of capital stock, etc., prohibited. — No property or securities received or held by any trust shall be mingled with the investments of the capital stock or other properties belonging to such trust company or be liable for its debts or obligations. Moneys held in the trust department by any trust company, or by any bank having a trust department or doing a trust business, pending distribution or investment may be treated as a deposit in the trust department or may be deposited in any other department of the bank, subject in other respects to the provisions of law relating to deposit of trust funds by trustees and others, but in case of the insolvency, closing or suspension of any such trust company or bank, claims for such moneys hereafter so deposited in any other department of such trust company or bank shall be preferred and the property and assets of such closed trust company or bank shall be impressed with a trust for the payment thereof.”
In the 23rd.Ohio Appellate, 409, it was held that where trust funds are mixed with the property of the trustee:
“It is necessary to be able to trace such trust funds into some existing specific property in the possession of the receiver, with which the trust funds' have been mixed.”
The evidence in this case, discloses that the trustee was expressly forbidden to mingle the funds of the estate of Seth S. Wheeler with any other property or monies owned or held by it. In violation of this trust agreement the trustee placed said funds in its uninvested trust account and other accounts. The sum of $2521.50 of such funds was there at the time of restriction, at the time of the commencement of liquidation, and still is there. The court is of the opinion that such handling of the funds of said trust estate comes clearly within the rule laid down in the *147 case of Smith v. Fuller, 86 O. S., 57, that the funds can be traced and a court of equity may engraft a trust upon such money so held in the bank and which came into the hands of the superintendent of banks, and are still in the hands of the superintendent of banks, so that the trustee will become a preferred creditor to the amount of such deposit so made, so traced and held in such funds. The court thinks that the following language used in syllabus 1, of 125 O. S., 507, was purposely used by the Supreme Court and distinguishes the deposit in the case at bar from the one referred to and passed upon in said case, and which language of the Supreme Court is as follows:
“Unless otherwise expressly provided by the trust agreement created and controlling such trust.”
It is expressly provided in the trust agreement in this case, as heretofore stated:
“Said trustee shall keep said estate separate and apart from any other property or monies owned or held by it.”
While it is incumbent upon the plaintiff to affirmatively show that the actual assets which came into the hands of the superintendent of banks, when he took over the institution for liquidation, were constituted in part of the assets belonging to said estate, the court is of the opinion that the evidence in this case that the books of the bank show that such cash assets were in its possession at the time it was closed for liquidation, is sufficient. The superintendent of banks is chargeable and responsible for the assets and property of the bank as they existed at the time said bank went into liquidation and he took charge thereof as provided by law, which in this case was on the 9th day of September, 1983.
An interesting discussion of the questions involved in this case, in addition to the authorities heretofore cited, may be found in the following cases:
“St. L. S. F. R. Co. v. Spiller, 274 U. S., 374, 71 L. Ed. 1060; Blakey v. Brenson, 286 U. S., 254; 76 L. Ed. 1089; Bd. of Commissioners v. Strawn, 157 Fed. 49; (C. C. A. 6th); First Natl. Bank v. Littlefield, 226 U. S., 110; 57 L. *148 Ed. 145; Schuyler v. Littlefield, 232 U. S., 707; 58 L. Ed. 807; Mechanics & Metals Natl. Bank v. Buchanan, 12 Fed. 2nd, 891; C. C. A. 8th; Early & Daniel Co. v. Pierson, 36 Fed. Second 732, (C. C. A. 5th); Blumenfield v. Union Natl. Bank, 38 Fed. 2nd 445; (C. C. A. 10th); Keyes v. Paducah & I. R. Co., 61 Fed. 2nd 611, (C. C. A. 6th)
The court is of the opinion that all of the foregoing authorities which have been cited, when carefully analyzed and applied to the facts in the case at bar, sustain the proposition that the plaintiff in this cause is entitled to a preference, and the court so finds and holds as heretofore outlined.
The evidence discloses that the lowest amount in the bank at any time between the time of its deposit and the time the bank went into liquidation was $14,489.94.
It seems to be a well settled rule that where a bank mingles a trust fund with other funds there is a trust impressed upon the common funds resulting and the amount for which a preference may be declared can not exceed the smallest amount contained in the common fund subsequent to the commingling. Schumacher v. Harriett, 52 Fed., 2nd, 817.
It has been also declared if the credit on the bank’s books of cash falls below the amount of the deposit trust funds the preference is limited to such amount. State v. Farmers Stage Bank, 172 Pac., 130; American Can Co. v. Williams, 178 Fed., 420; Bd. of Commissioners v. Strawn, 157 Fed., 49.
In the American Can Company case, page 422, the court held:
“It is well settled that, where trust funds are placed in a bank account, the amount which the plaintiff can recover must be limited to the lowest balance existing between the time of deposit and the receivership.”
An analysis of the findings in the case of Smith v. Fuller, 86 Ohio St., 57, syllabus 5, and especially pages 67, 68, indicates that the same principle was followed by the court in arriving at the conclusions reached in that case.
*149 In the case at bar the lowest amount on hand being $14,-489.94, and the amount of plaintiff’s claim being $2,521.50, there was on hand at the time of the commencement of liquidation a sufficient amount to pay plaintiff’s claim unless the total preferred claims amount to more than the fund.
The facts in this case disclose that the amount of the preferred claims which have been allowed and probably will be allowed by the superintendent of banks, will be greatly in excess of the lowest amount in the bank. The court, as heretofore outlined, has found that The Lima First American Trust Company was guilty of misfeasance in the handling of the funds of said Wheeler estate and that there has been deposited by The Lima First American Trust Company with the treasurer of state certain securities as provided by law for the protection of like creditors of the trust department of this bank. Said securities were deposited in compliance with Section 710-150, General Code, which is as follows:
“Section 710-150. Deposit required before trust company may begin business: withdrawal of securities.
No trust company, or corporation, either foreign or domestic, doing a trust business shall accept trusts which may be vested in, transferred or committed to it by a person, firm, association, corporation, court or other authority, of property within this state, until its paid-in capital is at least one hundred thousand dollars, and until such corporation has deposited with the treasurer of state in cash the sum of one hundred thousand dollars, except that the full amount of such deposit by such corporation may be in bonds, or other interest bearing obligations of the United States or those for the payment of principal and interest of which the faith of the United States is pledged, including bonds of the District of Columbia; farm loan bonds, issued under the provisions of the act of congress known as the Federal Farm Loan Act, approved July 17, 1916 and amendments thereto; bonds of this state or any municipality or county therein, of any other state or any municipality or county therein, or in the first mortgage bonds of any railroad corporation that for five years last past has earned at least five per cent net on its issues and outstanding capital stock, which securities and the sufficiency thereof shall be approved by the superintendent of banks.. *150 Prom time to time said treasurer shall, with the approval of the superintendent of banks, permit withdrawals of such securities or cash, or part thereof, upon deposit with him and approval of the superintendent of banks, of cash or other securities of the kind heretofore named, so as to maintain the value of such deposits as herein provided, and so long as it continues solvent he shall permit it to collect the interest on its securities so deposited.”
The court has been unable to find any authority governing the distribution of funds deposited in accordance with the foregoing section of the statute and counsel for parties have been unable to cite any authorities upon the question. So far as the court is aware no ruling has ever been made in the state of Ohio construing this section of the statutes and the court is left in the position of pioneering upon this question. A reading of this section of the statutes clearly discloses that it was the intention of the Legislature of Ohio to furnish some protection for the creditors of the trust departments of the banks of Ohio. The law clearly requires the deposit of securities for such protection. No provision is made as to how the creditor is to avail himself of such protection. It necessarily follows that he must be afforded all available remedies known to the law of Ohio, and also any remedies which may be fairly implied from the. statute itself. It seems to this court that when a security is provided and no provision is made as to how it is to be reached that it is the duty of a court of equity, if possible, to provide a remedy which may prove adequate for securing to such creditors their legal and equitable rights.
There are provisions of law whereby the superintendent of banks can seek the advice of the court having jurisdiction of cases involving liquidation of banks and there are provisions of law whereby the courts may make some orders governing the conduct of the superintendent of banks in the distribution of assets and in the determination of the rights of creditors. When the superintendent of banks takes over a bank for liquidation he acquires the property and assets of the bank for the purpose of administering and liquidating them in accordance with law. The securi *151 ties, although deposited with the treasurer of state in compliance with the provisions of the foregoing section of the statute, are assets in the hands of the superintendent of banks subject to the requirement of their application for payment of creditors in accordance with its provisions.
Can it be said that the Legislature intended that each individual creditor must be required to file suit against the treasurer of state? The law provides that all claims against the bank must be presented to the superintendent of banks for allowance. Plaintiff’s claim has been presented to the superintendent of banks and disallowed. Plaintiff has filed suit in the instant case and the court has found in plaintiff’s favor and is entering a judgment and decree accordingly. Must the court stop here and furnish the plaintiff no further relief? Does the law mean to provide that the court may only find the bank guilty of misfeasance and that such finding is res adjudicata as between the plaintiff and the superintendent of banks and that the plaintiff must then, in separate action, pursue the state treasurer? The court does not think that this was or could have been the intention of the Legislature as interpreted from the statute itself and in conjunction with other statutes affecting the rights and duties of the superintendent of banks. The superintendent of banks is a party to this suit and amenable to the orders of this court, which become final until reversed by a higher court. The court believes that the Court of Common Pleas has jurisdiction in a case like the case at bar to order the superintendent of banks, as soon as he discovers from the filing of claims which may be payable from the same fund and after the expiration of the time for filing of further claims, to file a claim with the treasurer of state for the payment to him of a sufficient amount of such fund to pay all of said claims either in full or in their proportionate share.
It is the opinion of the court that the superintendent of banks, upon the liquidation of a bank, is entitled to all of the fund so deposited with the treasurer of state in compliance with the provisions of said section of the statute and could, upon his own application or initiation of pro *152 ceedings, secure the same for administration and disposition. In other words, such fund is primarily provided by law to be held in lieu of a bond or the requirement of the execution of a bond by the trust department of a bank to secure certain trust accounts, thus aiding such department in functioning expeditiously, and the treasurer of state is made the custodian. When a bank is liquidated such deposit should be liquidated by the superintendent of banks the same as other assets, subject to any claim or claims of preferred creditors who are entitled to participate therein.
It is, therefore, ordered in this case that the superintendent of banks, after the determination of all claims presented which are entitled to payment out of the fund deposited with the treasurer of state in compliance with the provisions of Section 710-150, • General Code, make demand on the treasurer of state for sufficient amount of said fund, or all of said fund, if necessary, for payment of said claim and that if payment be' not made upon such demand, that he be authorized and directed to bring suit on behalf of such creditors against the treasurer of state for payment of the same, and make proper distribution of any funds so received, among such creditors.
Entry may be drawn in accordance with the foregoing findings, orders and decrees of the court, together with judgment in the amount so found due plaintiff.