THE OHIO STATE BANK & TRUST CO. v. THE BILT-
WELL TIRE & RUBBER CO. ET AL.

THE OHIO BANKING & TRUST CO. v. THE BILTWELL
TIRE & RUBBER CO. ET AL.

*Trusts—Creditor's action to impress trust upon assets in re-
ceiver's possession—Trust funds indistinguishably mixed
with assets—Creditor must trace funds into existing
specific property—Proof of mere conversion and use in
manufacturing business, insufficient, when.*

Where the rights and equities of creditors are involved, and
it is sought to impress a trust upon property in the pos-
session of a receiver of a trustee, who in violation of its
trust has indistinguishably mixed trust funds with its
own property, it is necessary to be able to trace such
trust funds into some existing specific property in the
possession of the receiver, with which the trust funds
have been mixed; proof of mere conversion by a trustee
of trust funds and the use of same in its manufacturing
business, without any proof whatever of how or in what
manner such trust funds were used, will not impress a
trust for such funds upon the general assets of the trustee
in the hands of its receiver.

(Decided January 7, 1924.)

APPEAL: Court of Appeals for Summit county.

*Messrs. Mather, Nesbitt & Willkie,* for plaintiff.
*Messrs. Sieber, Sieber & Amer,* for defendants.

WASHBURN, J. This is an action in equity, in
this court on appeal, to impress a trust upon the
general assets of a corporation now in the hands of
receivers. The case is submitted upon an agreed
statement of facts, which it is not necessary to set
forth in full in order to decide the legal question

which determines what judgment should be entered.

The Biltwell Tire & Rubber Company, which will hereafter be referred to as the rubber company, borrowed of the plaintiff bank and trust company, which will hereafter be referred to as the banking company, about $3,000, said loan being made October 3, 1919, and being due 60 days from date, and at the time said loan was made, and a note evidencing the same was signed and delivered, there was assigned, transferred, and delivered by said rubber company to said banking company, as collateral security to secure the payment of the note, an account amounting to $3,600 owned by said rubber company against a certain tire company, and a record of such transfer and assignment was duly entered at that time on the books and records of the rubber company, and particularly, on the face of said account.

Prior to the appointment of a receiver for the rubber company, and after it had so assigned and transferred the account, the rubber company collected the account and "converted the moneys so received from the collection of said account to its own use, and used the same in the furtherance and development of its business," said rubber company being then "engaged actively in the conduct of its business as a manufacturer of rubber products, doing business at its plant located at Barberton, Ohio," of which, as well as of certain "personal property then and there located in said plant," it was the owner.

After the collection of the account, the rubber company "in the operation of its business lost a large amount of money," and thereafter receivers were appointed for it, who came into the possession

of real and personal property of the rubber company appraised at over $500,000, but no money belonging to said corporation came into their possession, and "said receivers have not been able to discover any property, funds, or moneys that were in existence at the time of their appointment as said receivers, or since then, into which the proceeds of the collection of the collateral deposited with said plaintiff at the time of said loan specifically went," and the receivers under order and direction of the court have sold a part of the personal property so received by them.

After the appointment of the receivers, and the appointment of a special master to take sworn proof of the claims of creditors of the rubber company, the banking company, under oath, made proof of its $3,000 claim, but claimed no preference, and said claim was allowed by said master as a general claim against the rubber company, and such allowance was approved by the court, and thereafter, in the early part of 1922, this action was brought in equity to impress a trust for such claim upon the assets of the rubber company, now in the possession of the receivers.

The rubber company, when it received in 1919 the money which was the proceeds of said account belonging to the banking company, received the same impressed with a trust for the benefit of the banking company, and if said receivers came into the possession of any specific property of the rubber company, into which said money could be traced, said trust would attach to said property, either in its original or substituted form, if it were possible to identify it; but the agreed facts make it plain that no such tracing into specific property

is possible. It is not known into what specific property the money belonging to the banking company went; all that is claimed is that it became a part of the general assets of the rubber company.

What we shall hereafter say in this opinion should be considered and construed with the fact in mind that we are deciding a case where the rights and equities of third parties, general creditors, are involved, and that this is not simply a case between a trustee and a *cestui que trust*.

On the general subject of following trust funds or property, there are said to be two rules or established doctrines—one, that "so long as the trust property can be traced and followed into other property into which it has been *converted,* that remains subject to the trust;" the other, "that, if a man mixes trust funds with his own, the whole will be treated as the trust property, except so far as he may be able to distinguish what is his own." The right of the banking company to prevail in this suit, if based on either of these rules, is based on the rule last stated, which rule seems to be well established; but its application, when the rights and equities of third parties are involved, is not always accurately made, and thus, in some of the hundreds of cases on this general subject, there may be found statements which confound the two rules and consequently result in some confusion. We make no attempt to review or even cite the cases, but content ourselves with merely stating our conclusions.

Where it cannot be established into what property the trust property has been converted, and therefore it cannot be identified in its substituted form, and it is attempted to have a trust declared

in property with which it is claimed the trust property has been indistinguishably mixed, and the rights and equities of third parties are involved, there must be proof of some specific property with which the trust funds were mixed; mere use in one's business is not sufficient. Ability to trace the trust property is essential—in the one case into the property into which it has been *converted,* and in the other case into the property with which it has been *mixed.*

If I receive $100 in money in trust, and buy a cow with it, I convert the property into other property, and the rule first stated above applies; if I place the trust money so received with my own money, either in my pocket, or in my money drawer, or in my bank account, so as not to be able to distinguish my money from the trust money, I mix the trust property with my property, and the second rule applies. In both instances the property to which the trust attaches can be identified—in the one case, the cow; in the other, the money mixture. But if I become insolvent, and neither such cow nor *any part* of such money mixture is in existence, and such trust funds cannot be further traced or identified, then there is no property which can be declared to be trust property. *Schuyler* v. *Littlefield, Trustee,* 232 U. S., 707, 34 S. Ct., 466, 58 L. Ed., 806.

In the case at bar it is admitted that the trust funds in question cannot be traced into any specific property that is now or ever was in existence, and it is also apparent that no specific property can be named with which such trust funds were mixed; the mere admission that said trust funds were used by said rubber company "in the furtherance

and development of its business'' is not an admission that they were mixed with any specific property of the rubber company.

The trust funds in question were not so ''mixed'' with the general assets of said rubber company as to constitute all of said assets a trust fund. A majority of the cases hold that the beneficial owner of trust money must trace it into some specific fund or property in the custody of a representative of the trustee or fiduciary agent, to be entitled to a preference over general creditors.

As stated by another: The right of a beneficial owner to follow money which was held in trust, either as an original trust fund or as the proceeds of trust property, after a misapplication or conversion of the trustee in breach of the trust, and again subject it, or the property acquired by means of it, to the trust, ends when the money can be traced no longer and cannot be identified or recognized in any existing fund or property.

We have not overlooked a number of cases which declare the law to be that the general estate of an insolvent trustee, after passing to his executor, administrator, assignee for creditors, or receiver, should stand charged with the payment in full, and in preference to other debts, of a claim for money or property which the insolvent had held in trust, and had misapplied or converted to his own use. The courts following this doctrine held that it was not necessary that the misapplied trust funds or proceeds of the trust property should have actually come into the possession of the receiver, or that they should be traced into any property of the estate, or that they should be identified in any form as a part of the general assets and property

of the trustee, but that it was sufficient that they entered generally into and augmented the trustee's estate, and that they did augment the estate would be presumed in the absence of proof of just what the trustee did with the trust funds.

This doctrine was announced by the Supreme Court of Wisconsin, and was followed by the courts of Kansas and a few other western states; but elsewhere in the United States the doctrine was much criticized, and later the Supreme Courts of both Wisconsin and Kansas repudiated the doctrine. *Nonotuck Silk Co.* v. *Flanders,* 87 Wis., 237, 58 N. W., 383.

The fact that the trustee once had possession of trust funds or property, and used the same in the furtherance and development of his business, does not raise a presumption, and is not sufficient to prove, that such trust property, or the proceeds thereof in some form, came into the possession of the receiver for such trustee, and really exist as a part of the assets of the estate. By the great weight of authority, the trust property must be traced into the receiver's possession in some form, and if it is impossible to point out the precise item which embraces it, then under the most liberal rule which is now considered equitable and just it must be established at least that the specific subject of the trust or its proceeds, somewhere and in some form, actually entered into, became a part of, and really exist in the assets in the possession of the receiver.

While it is admitted in this case that the rubber company used said trust funds in its business, it is also admitted that none of the specific property into which said trust funds went was in existence

when the receivers were appointed, and that the company, after the collection of said account, lost a large amount of money, and there is no proof that said trust property exists in any form in the assets in the possession of the receiver, or that it augments the estate, and therefore there is nothing to be subjected to the trust, and the banking company cannot obtain a preference over other creditors of the insolvent estate out of the property and assets into which no part of the trust funds or their proceeds is traceable.

The courts of Ohio have not adopted the rule or doctrine, hereinbefore referred to, which was announced and followed for some time by the Supreme Courts of Wisconsin and Kansas, and which is still adhered to in some states, but, on the contrary, have approved the rule that the mere use by a trustee of trust funds in his own business, where no part of such trust funds or the proceeds thereof can be traced into the possession of his receiver, will not authorize a court of equity in impressing a trust upon assets of the trustee in the possession of the receiver. *Reeves, Stephens & Co.* v. *State Bank of Ohio,* 8 Ohio St., 465, at page 483.

In *Jones* v. *Kilbreth,* 49 Ohio St., 401, 31 N. E., 346, the trust funds were traced directly into the possession of the assignee, and such was the case in *Orme and Okey, Rec'rs.,* v. *Baker,* 74 Ohio St., 337, 78 N. E., 439, 113 Am. St. Rep., 968, and in *Smith et al., Trustees,* v. *Fuller et al., Assignees,* 86 Ohio St., 57, 99 N. E., 214, L. R. A., 1916C, 6, Ann. Cas., 1913D, 387.

In *Warner, Assignee,* v. *Urfer,* 22 C. C., (N. S.), 59, 30 C. D., 601, relief was denied because the

trust funds could not be traced into the possession of the assignee, and in *Mad River Natl. Bank* v. *Melhorn et al., Trustees,* 8 C. C., 191, 4 C. D., 401, relief was granted because it was found that the trust money "passed to the assignees." In the case last cited, the trust money just previous to the failure was commingled with the bank's money, and the minimum of such money mixture did not fall below the amount of such trust funds, and exceeded said amount at the time of the failure. The money above said minimum paid out by the bank from such mixture before the failure was presumed to be its money, and the trust funds remained a part of the mixture which came into the possession of the assignee. The same principle was announced in *Orme and Okey* v. *Baker* and in *Smith* v. *Fuller, supra.*

In *Deering Harvester Co.* v. *Keifer, Adm'r.,* 20 C. C., 311, 11 C. D., 270, the court recognized the necessity of being able to trace trust funds into the property sought to be impressed with the trust; but the court seems to have been of the opinion that a showing that the trustee used the trust funds in his private business, that of a storekeeper, was sufficient to trace said funds into the trustee's stock of goods on hand at the time of the failure. In so doing we think the court was in error, and that it really applied the doctrine of the Wisconsin and Kansas courts, which, as has been said, has been repudiated by such courts, and such decision is inconsistent with *Reeves, Stephens & Co.* v. *Bank, supra,* and the great weight of authority.

Our conclusion on this question makes it unnecessary to decide the other question argued, as to whether the banking company, by proving its

claim as a general creditor, waived its right to claim a preference.

A decree may be drawn for the defendants in this case, No. 772, denying the prayer of the petition, and a like entry may be made in case No. 773, *Ohio Banking & Trust Co.* v. *Biltwell Tire & Rubber Co. et al.*

*Decree for defendants.*

FUNK, P. J., and PARDEE, J., concur.