ESTATE OF COWLING, APPELLANT, *v.* ESTATE OF COWLING ET AL., APPELLEES.

[Cite as *Estate of Cowling v. Estate of Cowling,*
109 Ohio St.3d 276, 2006-Ohio-2418.]

(No. 2004–1101—Submitted March 30, 2005—Decided May 31, 2006.)

PFEIFER, J.

{¶ 1} The issue in this case is whether the court of appeals properly reversed the trial court's decisions to deny motions for directed verdict and judgment notwithstanding the verdict. We reverse, reinstate the trial court's order for the establishment of a constructive trust, and modify the order to place the constructive trust over the assets in their present form as cash deposits held by the Lorain County Clerk of Courts.

I

{¶ 2} Grace and Garnard Cowling married in 1967. It was a second marriage for both of them, and each of them had children from a previous marriage. Sandra Reddington and appellees Gary Cowling and Richard Cowling are Garnard's children from his previous marriage. Appellee Deanna Cowling is Gary's wife; appellee Dianne Cowling is Richard's wife. The appellees will be referred to collectively as the Cowlings. Grace and Garnard had no children together.

{¶ 3} Grace and Garnard owned various brokerage accounts and stock investments jointly with rights of survivorship. On July 16, 1996, Grace signed irrevocable documents that transferred stocks to Garnard. This transaction gave Garnard exclusive possession and control over these stocks, which previously had been owned and controlled by both Grace and Garnard. Garnard placed the stocks in an account that he designated in December 1996 as a transfer-on-death ("TOD") account, with his children named as the beneficiaries. Garnard gave some of these stocks to Gary, Richard, and Sandra between December 1996 and February 1997. Garnard transferred additional assets from joint brokerage accounts into his own name sometime in 1996 or 1997. He then placed those assets in the TOD accounts. The assets in the TOD accounts passed to Gary, Richard, and Sandra upon Garnard's death on February 8, 1998. The total amount received by Garnard's children as a result of the gifts of stock ($142,363.00) and the proceeds of the TOD accounts ($182,995.69) was $325,358.69.

{¶ 4} Grace filed an equitable claim against the Cowlings for a declaratory judgment to establish a constructive trust over the assets transferred by Garnard to the Cowlings. Grace's complaint also made claims against Garnard's estate for breach of contract, conversion, breach of fiduciary duty, negligent misrepresentation, and fraud.

{¶ 5} The record contains much evidence of Grace's and Garnard's respective contributions to their joint assets, including the testimony of Grace's expert witness Mark Bober, a certified public accountant, testimony of various nonexpert witnesses, and a variety of income tax returns, stock certificates, and gift and estate tax returns. Bober estimated that 74 percent of the assets were attributable to contributions made by Grace. Although Bober's analysis did not directly track Grace's personal assets into the joint accounts with rights of survivorship, it was based upon increases in investment income after Grace and Garnard sold stocks and their residence. He also considered the proportion of the stocks and the residence that had been owned by Grace. The Cowlings attempted to refute Grace's proof of her contributions and offered tax returns and stock certificates as evidence.

{¶ 6} The court instructed the jury (1) to determine whether Garnard had withdrawn funds from the joint and survivorship accounts in excess of the contributions attributable to him and (2) to assess damages in the amount of assets that had been wrongfully transferred by Garnard. The court also instructed the jury to award only damages that were proven by Grace by a preponderance of the evidence. The jury found that Garnard had withdrawn funds from the accounts in excess of the contributions attributable to him and that the damages suffered by Grace were $255,354. The court rendered a default judgment in that amount against Garnard's estate, which had not answered or participated in the trial. Garnard's estate did not appeal.

{¶ 7} In its judgment, the trial court also declared a constructive trust in the total amount of $255,354, imposed on each of the Cowlings in proportion to the amount that each had individually received from Garnard. The trial court did not designate the specific property or assets over which the constructive trust was to be imposed. The Cowlings moved for a new trial and for judgment notwithstanding the verdict; the motion was denied.

{¶ 8} On January 27, 2003, after trial but before the decision of the court of appeals, the parties stipulated that the assets had been retained by the Cowlings during the trial. After the trial, the assets were sold to post cash deposits for the appeal. These cash deposits are being held by the Lorain County Clerk of Courts. Sandra Reddington satisfied the portion of the judgment against her and was not a party to the appeal.

{¶ 9} While the appeal was pending, Grace Cowling died, on July 8, 2002. Appellant estate of Grace Cowling was substituted as plaintiff by the court of appeals pursuant to App.R. 29(A).

{¶ 10} The court of appeals reversed the trial court's denial of the Cowlings' motions for directed verdict and judgment notwithstanding the verdict regarding the claim for the establishment of a constructive trust. The court of appeals

thereby reversed the trial court's equitable order for the imposition of a constructive trust. Grace's estate appealed.

{¶ 11} The cause is before this court upon the acceptance of a discretionary appeal.

## II

{¶ 12} "The existence of a joint and survivorship bank account raises a rebuttable presumption that co-owners of the account share equally in the ownership of the funds on deposit." *Vetter v. Hampton* (1978), 54 Ohio St.2d 227, 8 O.O.3d 198, 375 N.E.2d 804, paragraph three of the syllabus. This presumption applies in the absence of evidence to the contrary. Id. at paragraph four of the syllabus; see *Wright v. Bloom* (1994), 69 Ohio St.3d 596, 602–603, 635 N.E.2d 31. "A joint and survivorship account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." *In re Estate of Thompson* (1981), 66 Ohio St.2d 433, 20 O.O.3d 371, 423 N.E.2d 90, paragraph one of the syllabus; see Uniform Probate Code 6–103. We expressly stated that *Thompson* did not "significantly alter our earlier case law" but merely amended our analytic framework to better effectuate "the intent of the parties to create joint and survivorship accounts." *Thompson,* 66 Ohio St.2d at 439, 20 O.O.3d 371, 423 N.E.2d 90. This language indicates that, although we adopted a new presumption for determining ownership of joint and survivorship accounts, the presumption of equal ownership continues to exist when net contributions are not proven. See Uniform Probate Code 6–103, Official Comment (courts should "divide the account equally among the parties to the extent that net contributions cannot be proven").

{¶ 13} "Net contributions" is not defined in the Revised Code and has not been defined by this court. The Uniform Probate Code defines "net contributions" of a party as "the sum of all deposits to an account made by or for the party, less all payments from the account made to or for the party which have not been paid to or applied to the use of another party and a proportionate share of any charges deducted from the account, plus a proportionate share of any interest or dividends earned." Uniform Probate Code 6–211. As we concluded in *Thompson* concerning another section of the Uniform Probate Code, we conclude that this definition from the Uniform Probate Code (the "net contributions presumption") "accurately reflect[s] the common experiences of mankind in regard to joint and survivorship accounts," and we adopt this definition as the law of Ohio. See *Thompson,* 66 Ohio St.2d at 439, 20 O.O.3d 371, 423 N.E.2d 90.

{¶ 14} We also conclude that the determination of net contributions is a factual determination for the trier of fact. Parties may produce evidence of their own net contributions, the net contributions of another account holder, or the net

contributions of all account holders. Evidence of net contributions presented by one party will often necessarily rebut the evidence offered by an opposing party. Ultimately, the finder of fact must determine net contributions based on the evidence presented.

{¶ 15} Next we must determine the evidentiary burden necessary to prove net contributions to a joint and survivorship account. In *Union Properties, Inc. v. Cleveland Trust Co.* (1949), 152 Ohio St. 430, 435, 40 O.O. 425, 89 N.E.2d 638, this court held that a husband's creditor could not appropriate money from a joint account, of which the husband was a joint account holder, because there was evidence of "sufficient probative force [that] the money on deposit was in reality the sole property" of his wife. The evidence consisted of testimony by the husband and wife that the funds on deposit belonged exclusively to the wife. Id. at 432, 40 O.O. 425, 89 N.E.2d 638. Although the court did not discuss the evidentiary burden, we conclude that the court applied a preponderance-of-the-evidence standard. See *Drosos v. Drosos* (Nov. 17, 1988), Cuyahoga App. No. 54138, 1988 WL 122961, at *5 (burden of proving contributions by a preponderance of the evidence was not met). We hold that evidence of net contributions must be proven by a preponderance of the evidence.

III

{¶ 16} The trial court instructed the jury to determine damages suffered by Grace as a result of Garnard's withdrawals in excess of the contributions attributable to him. Garnard withdrew assets worth $325,358.69 from the joint accounts and had transferred those assets by gift or TOD accounts to his children as of February 8, 1998, the day of his death. The jury instructions did not specifically state that damages would be equivalent to the net contributions made by Grace. Nevertheless, because Garnard transferred only assets that had been withdrawn from joint accounts, we conclude that the damages award, $255,354, is the equivalent of a determination of Grace's net contributions.

{¶ 17} Neither Garnard's estate nor the Cowlings appealed the jury's damages award. Accordingly, whether the jury's damages award could have been successfully challenged is not before us. The jury's determination of damages remains unmodified. Garnard's estate has no assets with which to pay damages. We look next, therefore, to the Cowlings to determine whether the assets transferred to them are held in trust for Grace's estate.

IV

{¶ 18} A constructive trust is a " 'trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or

who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. It is raised by equity to satisfy the demands of justice.'" (Footnotes omitted.) *Ferguson v. Owens* (1984), 9 Ohio St.3d 223, 225, 9 OBR 565, 459 N.E.2d 1293, quoting 76 American Jurisprudence 2d (1975) 446, Trusts, Section 221. A constructive trust is considered a trust because "'[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.'" Id. at 225, 9 OBR 565, 459 N.E.2d 1293, quoting *Beatty v. Guggenheim Exploration Co.* (1919), 225 N.Y. 380, 386, 389, 122 N.E. 378.

{¶ 19} A constructive trust is an equitable remedy that protects against unjust enrichment and is usually invoked when property has been obtained by fraud. *Ferguson,* 9 Ohio St.3d at 226, 9 OBR 565, 459 N.E.2d 1293; *Aetna Life Ins. Co. v. Hussey* (1992), 63 Ohio St.3d 640, 642, 590 N.E.2d 724. "[A] constructive trust may also be imposed where it is against the principles of equity that the property be retained by a certain person even though the property was acquired without fraud." *Ferguson,* 9 Ohio St.3d at 226, 9 OBR 565, 459 N.E.2d 1293, citing 53 Ohio Jurisprudence 2d (1962) 578–579, Trusts, Section 88; V Scott on Trusts (3d Ed.1967) 3412, Section 462. "In applying the theories of constructive trusts, courts also apply the well known equitable maxim, 'equity regards [as] done that which ought to be done.'" *Ferguson,* 9 Ohio St.3d at 226, 9 OBR 565, 459 N.E.2d 1293.

{¶ 20} The party seeking to have a constructive trust imposed bears the burden of proof by clear and convincing evidence. *Univ. Hosps. of Cleveland, Inc. v. Lynch,* 96 Ohio St.3d 118, 2002-Ohio-3748, 772 N.E.2d 105, paragraph three of the syllabus.

{¶ 21} Although this court has never addressed the issue of tracing, various Ohio courts have held that a constructive trust cannot be imposed absent tracing by the claimant. See *Dixon v. Smith* (1997), 119 Ohio App.3d 308, 320, 695 N.E.2d 284; *State ex rel. Marietta v. Groves* (Aug. 9, 1985), 4th Dist. No. 84 X 7, 1985 WL 8297, at *2 ("Ohio follows the majority rule that there must be tracing"); *Ohio State Bank & Trust Co. v. Biltwell Tire & Rubber Co.* (1924), 23 Ohio App. 409, 412–413, 155 N.E. 163. The parties agree that tracing is a necessary predicate to the imposition of a constructive trust in Ohio. See Ashley S. Hohimer, Constructive Trusts in Bankruptcy: Is an Equitable Interest in Property More Than Just a "Claim"? (2003), 19 Bankr.Dev.J. 499, 510–511 ("Tracing is a process where the claimant basically must be able to point to the identifiable property or fund and say, 'This is mine.' If the funds or property are untraceable—meaning the claimant cannot determine where they were deposited or what the debtor has done with them—the equitable remedy is not available").

{¶ 22} When they have addressed tracing, courts in Ohio have required the claimant to offer sufficient proof of tracing the property through any changes in form or possessor to the possessor of the property over whom the constructive trust should be placed. See *Dixon*, 119 Ohio App.3d at 320, 695 N.E.2d 284; *State ex rel. Marietta*, 4th Dist. No. 84 X 7, 1985 WL 8297; and *Biltwell Tire*, 23 Ohio App. 409, 412–413, 155 N.E. 163. We are in accord with these decisions and hold that before a constructive trust can be imposed, there must be adequate tracing from the time of the wrongful deprivation of the relevant assets to the specific property over which the constructive trust should be placed.

{¶ 23} We have previously held that a party seeking the judicial imposition of a constructive trust "bears the burden of producing clear and convincing evidence justifying it." *Lynch*, 96 Ohio St.3d 118, 772 N.E.2d 105, paragraph three of the syllabus. *Lynch* specifically referred to the claimant's burden of proof and the evidentiary standard for proving the unjust-enrichment aspect of a constructive trust. Id. at 130, 772 N.E.2d 105. We conclude that the same evidentiary burden should apply to tracing and that the burden of proof is on the claimant.

{¶ 24} A claimant seeking the imposition of a constructive trust must specify the particular property over which the constructive trust is to be placed. If the form or possessor of the property over which the constructive trust should be placed changes during a lawsuit, the claimant should be given an opportunity to conduct discovery, if necessary, and present evidence of the new location or form of the property over which the trust should be placed.

{¶ 25} A constructive trust is an equitable remedy that must be imposed on particular assets, not on a value. For example, if a party is inequitably deprived of 100 shares of stock that are valued at $10,000, a constructive trust should be imposed over 100 shares of stock, not $10,000. The value of the stock may decrease to $9,000 through no fault of the present possessor. In that instance, it would be inequitable to impose a constructive trust for a higher dollar amount than the stock's new value. Similarly, should the stock rise, the beneficiary of a constructive trust should not be deprived of that increase in value.

{¶ 26} Constructive trusts should be placed over the property of the party who wrongfully obtained the property. When, as in this case, the property was subsequently transferred to third parties, a constructive trust can be imposed.

V

{¶ 27} The Cowlings challenged the trial court's denial of their motions for directed verdict and judgment notwithstanding the verdict with respect to Grace's estate's claim for a constructive trust. We therefore reiterate the standards we apply when determining whether a motion for directed verdict or a motion for judgment notwithstanding the verdict has been properly denied.

{¶ 28} The standard for a motion for judgment notwithstanding the verdict pursuant to Civ.R. 50(B) is the same as that for a motion for a directed verdict pursuant to Civ.R. 50(A). *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 121, 671 N.E.2d 252, fn. 2, citing *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 318–319, 662 N.E.2d 287, and *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 344 N.E.2d 334.

{¶ 29} Civ.R. 50(A)(4) states:

{¶ 30} "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

{¶ 31} "The law in Ohio regarding directed verdicts is well formulated. In addition to Civ.R. 50(A), it is well established that the court must neither consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion. * * * Thus, 'if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied. *Kellerman v. J.S. Durig Co.* (1964), 176 Ohio St. 320 [27 O.O.2d 241, 199 N.E.2d 562] * * *.' *Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 115 [4 O.O.3d 243, 363 N.E.2d 367]." *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284–285, 21 O.O.3d 177, 423 N.E.2d 467.

{¶ 32} We must consider whether Grace's estate presented sufficient evidence regarding her claim for the imposition of a constructive trust to defeat a motion for directed verdict and a motion for judgment notwithstanding the verdict. We must consider whether Grace's estate presented clear and convincing evidence of the inequitable situation or unjust enrichment that would result if the Cowlings retain the assets and whether Grace's estate provided clear and convincing evidence tracing the assets from the joint and survivorship accounts in the name of Grace and Garnard to property held by the Cowlings.

{¶ 33} Garnard withdrew all of the assets that he subsequently transferred to his children from joint and survivorship accounts that were in his and Grace's names. Grace's estate presented evidence indicating that these withdrawals exceeded Garnard's contributions. Garnard transferred all of the assets that he had withdrawn from the joint and survivorship accounts to his children. Construing this evidence most strongly in Grace's estate's favor, reasonable minds could only conclude that inequity had been proven by clear and convincing evidence. We conclude that Grace's estate presented sufficient evidence with

respect to this element of a constructive-trust claim to survive motions for a directed verdict and judgment notwithstanding the verdict.

{¶ 34} As to the tracing requirement, the parties stipulated that at the time of the trial, the assets that Garnard had transferred to his children were in the same form in which Garnard had received them. According to the stipulation, the Cowlings retained the assets throughout the trial and (with the exception of Reddington, who paid her share of the assets to Grace's estate) then sold the assets to post cash deposits for an appeal. We conclude that the evidence and stipulations on the record are sufficient to satisfy the tracing requirement.

{¶ 35} This case is in equity. See John Selden, Table Talk (1689), quoted in Bartlett, Familiar Quotations (11th Ed., Morley Ed.1947) 130 ("Equity is a roguish thing. For Law we have a measure, know what to trust to; Equity is according to the conscience of him that is Chancellor, and as that is larger or narrower, so is Equity. 'Tis all one as if they should make the standard for the measure we call a 'foot' a Chancellor's foot; what an uncertain measure would this be! One Chancellor has a long foot, another a short foot, a third an indifferent foot. 'Tis the same thing in the Chancellor's conscience"). Despite the imprecision of some of the standards we apply in equity, we can only conclude, under any standard, that the Cowlings would unjustly benefit in the absence of a constructive trust. Accordingly, we reverse the decision of the court of appeals. The trial court's order for a constructive trust, however, cannot stand unmodified.

{¶ 36} The trial court did not specify the particular assets over which the constructive trust was to be imposed. That was error, and we hereby order that the constructive trust be specifically imposed over the assets currently held by the Lorain County Clerk of Courts. The trial court ordered that the constructive trust be placed over a specific dollar amount, which now, given the conversion of assets into cash, is appropriate. At the time, however, the trust should have been placed over the proportion of the specific assets held by the Cowlings that equaled Grace's net contributions, as determined by the jury.

{¶ 37} The total value of the assets on February 8, 1998, the day of Garnard's death, was $325,358.69. The jury determined damages of $255,354.00. The trial court order should be modified to place a constructive trust over 78.5 percent ($255,354.00 divided by $325,358.69) of the assets held by each appellee in their current form.

{¶ 38} We hereby order the reinstatement of the trial court's order for the imposition of a constructive trust and modify the order to place the constructive trust over the assets currently held by the Lorain County Clerk of Courts.

So ordered.

Moyer, C.J., Resnick, Lundberg Stratton, O'Connor and Lanzinger, JJ., concur.

O'Donnell, J., concurs in judgment only.

---

John L. Keyse–Walker, for appellees.

Richard D. Panza, for appellant.