DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 INTRODUCTION {¶ 1} Two months before his death, Mark Woodruff left his wife and moved in with his girlfriend. After he cashed an IRA and started burning through it, his wife, Cynthia Woodruff, filed for divorce and obtained a temporary restraining order, prohibiting him from disposing of marital assets. Mr. Woodruff died in an automobile collision a month later, before the divorce was finalized. As executrix and sole beneficiary of Mr. Woodruff's estate, Mrs. Woodruff sought to recover the remaining IRA proceeds from Mr. Woodruff's girlfriend and have a *Page 2 
constructive trust imposed on the gifts he bought the girlfriend. The trial court denied Mrs. Woodruffs claims, concluding that she had not established that Mr. Woodruffs girlfriend embezzled or concealed estate assets or was unjustly enriched. This Court affirms because the trial court did not apply an incorrect standard for unjust enrichment and because its decision was not against the manifest weight of the evidence.
 FACTS {¶ 2} Mr. Woodruff moved into an apartment with his girlfriend on December 1, 2005. He cashed an IRA worth $165,000 and deposited the $134,000 after-tax value in a joint checking account he shared with the girlfriend. The IRA had been part of the Woodruffs' joint financial plan. Because Mr. Woodruffs former employer matched contributions to the account, the Woodruffs had maximized Mr. Woodruffs IRA contributions and used Mrs. Woodruffs income to pay their household expenses.
 {¶ 3} Over the following weeks, Mr. Woodruff spent most of the IRA proceeds. He purchased jewelry for his girlfriend, trips for the two of them, and furniture for their apartment. He also paid off credit card charges and loans owed on three vehicles, including $3000 owed on his girlfriend's car. Mr. Woodruff invested $35,000 in a certificate of deposit and deposited the remaining $10,000 in joint bank accounts. After Mr. Woodruffs death, his girlfriend spent $3000 on their apartment until it could be re-let. *Page 3 
 {¶ 4} Mrs. Woodruff filed for divorce on December 23, 2005. On December 30, 2005, the domestic relations court issued a temporary restraining order prohibiting Mr. Woodruff from disposing of any marital assets. Mr. Woodruff died on January 24, 2006, and, on February 16, 2006, Mrs. Woodruff opened an estate. On April 12, 2006, Mrs. Woodruff filed a Complaint against Mr. Woodruff's girlfriend under Section 2109.50 of the Ohio Revised Code, seeking to recover any assets of the estate that were in her possession.
 {¶ 5} The parties agreed to submit the case to the trial court on their briefs and stipulations of fact. Mrs. Woodruff argued that, not only had Mr. Woodruffs girlfriend violated Section 2109.50, but that she had also been unjustly enriched. On March 1, 2007, the trial court denied Mrs. Woodruffs claims, finding that Mr. Woodruffs girlfriend had not concealed or embezzled any assets, committed fraud, or been unjustly enriched. Mrs. Woodruff has appealed, assigning two errors regarding her unjust enrichment claim.
 ASSIGNMENTS OF ERROR {¶ 6} Mrs. Woodruffs assignments of error are interrelated. Her first assignment of error is that the trial court ruled against the manifest weight of the evidence when it failed to impose a constructive trust on the assets held by Mr. Woodruffs girlfriend that can be traced to Mr. Woodruffs IRA. Her second assignment of error is that the trial court incorrectly held that a constructive trust could only be imposed if the manner in which Mr. Woodruffs girlfriend received *Page 4 
the IRA proceeds was unconscionable. This Court will address the assignments of error together.
 MANIFEST WEIGHT {¶ 7} In State v. Wilson, 113 Ohio St. 3d 382, 2007-Ohio-2202, at ¶ 24, the Ohio Supreme Court held that the test for whether a judgment is against the weight of the evidence in civil cases is different from the test applicable in criminal cases. According to the Supreme Court inWilson, the standard applicable in civil cases "was explained inC.E. Morris Co. v. Foley Constr. Co., 54 Ohio St.2d 279." Id. The "explanation" in C.E. Morris was that "judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Id. (quoting C.E. Morris Co.,54 Ohio St. 2d at 279); but see Huntington Nat'l Bank v. Chappell, 9th Dist. No. 06CA008979, 2007-Ohio-4344, at ¶ 17-75 (Dickinson, J., concurring).
 CONSTRUCTIVE TRUST {¶ 8} "A constructive trust is a `trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good *Page 5 
conscience, hold and enjoy.'" Estate of Cowling v. Estate ofCowling, 109 Ohio St. 3d 276, 2006-Ohio-2418, at ¶ 18 (quotingFerguson v. Owens, 9 Ohio St. 3d 223, 225 (1984)). It is "an equitable remedy that may be used `[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest.'" Cosby v. Cosby,96 Ohio St. 3d 228, 2002-Ohio-4170, at ¶ 17 (quoting Ferguson, 9 Ohio St. 3d at 225).
 {¶ 9} A constructive trust is "an appropriate remedy against unjust enrichment." Ferguson, 9 Ohio St. 3d at 226. "Unjust enrichment of a person occurs when he or she `has and retains money or benefits which in justice and equity belong to another.'" Univ. Hosps. of Cleveland, Inc.v. Lynch, 96 Ohio St. 3d 118, 2002-Ohio-3748, at ¶ 60 (quoting Hummel v.Hummel, 133 Ohio St. 520, 528 (1938)).
 {¶ 10} A person seeking a constructive trust "bears the burden of producing clear and convincing evidence justifying it." Id. at syllabus paragraph three. "Clear and convincing evidence is that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford, 161 Ohio St. 469, syllabus paragraph three (1954). Accordingly, for the trial court to impose a constructive trust, Mrs. Woodruff had to establish, by clear and convincing evidence, that Mr. *Page 6 
Woodruffs girlfriend would be unjustly enriched if she retained ownership and control of the proceeds of Mr. Woodruffs IRA. SeeLynch, 2002-Ohio-3748 at ¶ 61.
 {¶ 11} Mrs. Woodruff has argued that the IRA was a central component of her and her husband's financial and retirement planning, that Mr. Woodruff cashed it without her consent, that his decision resulted in significant taxes and penalties, and that his girlfriend did nothing to earn it. She, therefore, has argued that it is unjust for Mr. Woodruffs girlfriend to retain the IRA's remaining proceeds and that a constructive trust should be imposed on several categories of assets: (1) the joint checking account, savings account, and certificate of deposit that Mr. Woodruff opened in his and his girlfriend's names; (2) the jewelry Mr. Woodruff gave his girlfriend; (3) the furniture Mr. Woodruff purchased for his and his girlfriend's new apartment; (4) the charges incurred by his girlfriend after his death; and (5) any remaining cash proceeds in his girlfriend's possession.
 {¶ 12} The trial court found that the certificate of deposit had been turned over to the estate and that two of the vehicles that Mr. Woodruff had paid off loans on were already in the estate's possession. This constituted $72,000 of the IRA proceeds. The trial court further found that Mr. Woodruffs girlfriend had between $13,000 and $17,000 in jewelry, $10,000 in a joint bank account, and some furniture in her possession that could be traced to the IRA. The remainder of the IRA proceeds had been spent on trips to Las Vegas and to pay off a loan on the *Page 7 
girlfriend's car. The trial court also found that Mr. Woodruffs girlfriend had not done "anything other than enjoy the largess of the deceased." She did not encourage Mr. Woodruffs activities or conspire to deprive his potential estate of any assets. In fact, "it was a surprise to everyone that there was an estate" because of Mr. Woodruffs unforeseen death. The trial court determined that Mr. Woodruff had the right to dispose of his assets before his death, and that, absent some culpability of his girlfriend, she had a right to receive those assets. The trial court, therefore, concluded that they were not assets of the estate. Mrs. Woodruff has not appealed that part of the trial court's decision and, therefore, has waived its review. See App.R.12(A)(2); App.R.(16)(A).
 {¶ 13} In deciding Mrs. Woodruff's unjust enrichment claim, the trial court first considered whether Mr. Woodruffs girlfriend had committed fraud. It concluded that there was no evidence that Mr. Woodruff had engaged in a scheme to defraud Mrs. Woodruff or that his girlfriend participated in such a scheme. The trial court next considered whether allowing Mr. Woodruff's girlfriend to retain the IRA proceeds would be unconscionable, noting that it is upsetting that a married man can dispose of his assets and defeat the interests of his wife. The trial court concluded, however, that Mr. Woodruff's girlfriend had not done anything unconscionable and that it was not unconscionable for her to receive the money and items that Mr. Woodruff gave her. It, therefore, denied Mrs. Woodruff's claim for unjust enrichment. *Page 8 
 {¶ 14} Mrs. Woodruff has argued that the trial court used an incorrect standard in determining whether to impose a constructive trust. Standards applied in equity, however, are imprecise. Estate of Cowlingv. Estate of Cowling, 109 Ohio St. 3d 276, 2006-Ohio-2148, at ¶ 35
(noting that what is equitable depends on the decision-maker). Fraud and unconscionable conduct are appropriate elements for a court to consider in deciding whether to impose a constructive trust. See In re Estate ofPerry, 12th Dist. No. 2007-03-061, 2008-Ohio-351, at ¶ 24 ("[O]ur review of the record has produced no indication of fraud, duress, or unconscionable conduct . . . that would indicate the probate court erred in failing to impose a constructive trust. . . ."). The trial court, therefore, did not err as a matter of law when it denied Mrs. Woodruff's unjust enrichment claim because she did not establish fraud or unconscionability.
 {¶ 15} This Court also concludes that the trial court's denial of Mrs. Woodruffs unjust enrichment claim was not against the manifest weight of the evidence. As the trial court noted, Mrs. Woodruff has recovered more than half of the IRA proceeds. She has waived her right to challenge the trial court's finding that the assets in Mr. Woodruff's girlfriend's possession were not assets of the estate. Although it is unfortunate that Mr. Woodruff spent his and his wife's savings recklessly, there was competent and credible evidence in the record for the trial court to determine that it was not unjust to allow Mr. Woodruff's girlfriend to *Page 9 
retain the gifts he bought her. Mrs. Woodruff's assignments of error are overruled.
 CONCLUSION {¶ 16} The trial court properly determined that it was not unjust for Mr. Woodruffs girlfriend to retain the gifts Mr. Woodruff bought her, even though those gifts were purchased with IRA proceeds. Mrs. Woodruffs assignments of error are overruled, and the judgment of the Wayne County Probate Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. *Page 10 
Costs taxed to appellant.
SLABY, P. J. CONCURS