[Cite as *DiPalma v. DiPalma*, 2023-Ohio-4053.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

MICHAEL DIPALMA

    Appellant

    v.

CATHERINE DIPALMA

    Appellee

C.A. No.     30507

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    20 CV 00138

DECISION AND JOURNAL ENTRY

Dated: November 8, 2023

SUTTON, Presiding Judge.

{¶1} Plaintiff-Appellant Michael DiPalma appeals from the judgment of the Summit County Court of Common Pleas, Probate Division, granting summary judgment in favor of Defendant-Appellee Catherine DiPalma. For the reasons that follow, this Court affirms.

I.

{¶2} The parties in this case are adult children of the decedent, John A. DiPalma. John passed away on December 9, 2020. Two days prior to his death, on December 7, 2020, his daughter, Catherine DiPalma, withdrew approximately $85,000 from two accounts, a checking and a savings account, at Fifth Third Bank. John and Catherine were joint owners of both accounts. John did not object to the withdrawal before he died and neither did the bank.

{¶3} Upon learning that his sister withdrew the money from the joint accounts, Michael DiPalma filed a complaint giving rise to the present action in Summit County Probate Court on December 29, 2020. Count One of the complaint sought declaratory judgment as to the owner of

the funds that were in John and Catherine's joint accounts. Count Two alleged that Catherine had concealed, embezzled, and was in wrongful possession of the funds she withdrew from the Fifth Third accounts. Count Three alleged breach of trust, breach of fiduciary duty, and self-dealing. Count Four sought injunctive relief to enjoin Catherine from taking any action on her personal account where she deposited the funds from the joint accounts.

{¶4} On February 4, 2021, the trial court issued a temporary order restraining Catherine from taking any further actions with regard to the money she withdrew from the joint accounts and set a hearing on the preliminary injunction on February 21, 2021.

{¶5} On March 11, 2021, the trial court issued a judgment entry ruling in favor of Michael. The trial court found that Michael had proven Catherine had no right to take the monies out of the joint account and granted the preliminary injunction. The trial court ordered the funds Catherine withdrew to be placed in a constructive trust which was to be turned over to John's estate.

{¶6} Catherine filed a motion for reconsideration on March 18, 2021. In that motion, Catherine argued the trial court had erred in its characterization of the accounts and that the trial court improperly placed the burden on her to show she did not improperly take the funds. On April 9, 2021, the trial court vacated its prior judgment and set the matter for further consideration.

{¶7} The parties then conducted extensive discovery, including depositions of Catherine, Michael, and Janice Santimarino, a Fifth Third Bank employee. Both Catherine and Michael filed motions for summary judgment, with each party responding in opposition to the other's motion.

{¶8} Michael voluntarily dismissed Counts Two and Three of the complaint on September 15, 2022, leaving only the issue of whether Catherine wrongfully withdrew the funds from the joint accounts for the trial court's consideration.

{¶9} On October 24, 2022, the trial court issued a judgment entry granting summary judgment to Catherine on the remaining counts of the complaint. It is from that judgment Michael timely appealed, assigning two errors for this Court's review.

II.

## ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED IN GRANTING CATHERINE DIPALMA'S MOTION FOR SUMMARY JUDGMENT.**

{¶10} In his first assignment of error, Michael argues that the trial court erred in granting summary judgment in favor of Catherine. For the reasons that follow, we disagree.

### Standard of Review – Summary Judgment

{¶11} Appellate review of an award of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Summary judgment is appropriate under Civ.R. 56 when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977), citing Civ.R. 56(C). A court must view the facts in the light most favorable to the non-moving party and must resolve any doubt in favor of the non-moving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992). A trial court does not have the liberty to choose among reasonable inferences in the context of summary judgment, and all competing inferences and questions of credibility must be resolved in the nonmoving party's favor. *Perez v. Scripps-Howard Broadcasting Co.*, 35 Ohio St.3d 215, 218 (1988).

{¶12} The Supreme Court of Ohio has set forth the nature of this burden-shifting paradigm as follows:

[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.

*Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).

**{¶13}** Here, the parties agreed to ten stipulations of fact prior to the determination of summary judgment. These stipulations included:

(1) The authenticity of the Fifth Third Bank Signature cards for the joint checking and joint savings account signed by Catherine and John;

(2) Fifth Third Bank's Depositor Rules and Regulations;

(3) That the joint accounts "were at all times subject to and governed by the Signature Cards and Depositor Rules and Regulations";

(4) The accounts in question were joint accounts with the right of survivorship of John and Catherine;

(5) John knowingly, willingly, and purposely added Catherine as joint owner of the accounts;

(6) John was under no duress or undue influence, no lack of capacity, no impairment or coercion at any time relevant to this matter, and in particular at the time he established the accounts at Fifth Third with Catherine;

(7) John understood that according to the terms of the account, upon the first death of one of the joint account owners the survivor automatically becomes the sole owner of the account;

(8) The Fifth Third Bank account terms and conditions signed by John and Catherine stated that:

Any Joint Customer may stop payment, close the account, withdraw all or a portion of the account balance, transfer funds to or from the account, or otherwise transact on the account and make changes or give instructions, including but not limited to enrolling in services, adding other signers to the account, and providing a power of attorney. Any such use of the account by any Joint Customer, or an authorized agent of any Joint Customer, shall be deemed ratified and approved by each Joint Customer as if the transaction or activity had been made and authorized personally by any and all of the Joint Customers.

(9) John understood that as a joint owner of the accounts, Catherine could withdraw funds at any time from the accounts;

(10) At no time during his life did John object or complain to Catherine or to Fifth Third regarding Catherine's withdrawals from the accounts complained of in the complaint.

Accordingly, the only issue left for the trial court to decide was whether Catherine wrongfully withdrew the funds from the joint accounts prior to John's death.

### Joint and Survivorship Accounts

**{¶14}** The existence of a joint and survivorship bank account raises a rebuttable presumption that co-owners of the account share equally in the ownership of the funds on deposit. *Estate of Cowling v. Estate of Cowling*, 109 Ohio St.3d 276, 2006-Ohio-2418, ¶ 12, citing *Vetter v. Hampton*, 54 Ohio St.2d 227 (1978), paragraph three of the syllabus. This presumption applies in the absence of evidence to the contrary. *Cowling* at ¶ 12, citing *Vetter* at paragraph four of the syllabus. "A joint and survivorship account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." *Cowling* at ¶12, citing *In re Estate of Thompson*, 66 Ohio St.2d 433 (1982), paragraph three of the syllabus; *see* Uniform Probate Code 6-103. "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a

reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, paragraph three of the syllabus (1954).

{¶15} Here, there is clear and convincing evidence in the record that John intended for the money in the Fifth Third account to belong to both John and Catherine. First, the parties stipulated that the account agreement stated the following language:

> Any Joint Customer may stop payment, close the account, withdraw all or a portion of the account balance, transfer funds to or from the account, or otherwise transact on the account and make changes or give instructions, including but not limited to enrolling in services, adding other signers to the account, and providing a power of attorney. Any such use of the account by any Joint Customer, or an authorized agent of any Joint Customer, shall be deemed ratified and approved by each Joint Customer as if the transaction or activity had been made and authorized personally by any and all of the Joint Customers.

Thus, when Catherine withdrew the funds from the account, such withdrawal, under the terms of the account agreement, was deemed ratified and approved by John.

{¶16} Janice Santimarino, the employee who added Catherine as a joint owner to John's accounts at Fifth Third Bank, testified that she provided John and Catherine with a copy of the terms and conditions when Catherine was added to the accounts. She also testified that she reviewed the terms of the account with them and made sure that both John and Catherine understood the ramifications of adding Catherine as a joint owner to the accounts.

{¶17} Catherine testified that her father added her to the accounts because he wanted her to share in the money in the accounts with him. She testified that while at the bank, Ms. Santimarino explained to both her and her father that "this would be a joint account and that [John and Catherine] would both * * * freely have access to the funds in that account." She also testified that she had the ability to use the money for herself while her father was alive, but she did not use the money for herself. She testified that she routinely transferred money from the joint account to

her personal checking account, and her father was aware that she did that. Catherine stated that when her father entered the hospital in late October 2020, she visited him nearly every day, and that shortly before he died, he instructed her to transfer the money from the joint accounts into her own account. Therefore, she contended that she was merely carrying out her dying father's wishes.

{¶18} Michael presented evidence in the form of his own deposition testimony that his father had planned to put him on the accounts as a joint owner, but because of his own personal financial problems, he dissuaded his father from adding him as a joint owner of the account. Michael alleged that he told his father that he was concerned that his creditors may be able to take money out of the account if he was a co-owner. Michael does not recognize that his own deposition testimony acknowledges the very fact that he is disputing with regard to his sister: that his father, by adding a joint owner to the account, gave the joint owner co-ownership of the funds in the account.

{¶19} Michael further alleged that he gave someone at the bank his address and social security number to make him a payable on death beneficiary of the account, but that the bank erred in never adding him to the account. However, no additional evidence is contained in the record to support this claim.

{¶20} Michael also testified during his deposition that he learned of the withdrawal of the funds from the Fifth Third accounts by opening bank statements that came through the mail to his father's home. Further, under oath in his deposition testimony, Michael stated that no one from Fifth Third Bank ever called him after his father died. When presented with an affidavit executed by Michael's attorney in support of the temporary restraining order that stated "I was informed by Michael that after the death of [John] he received a call from Fifth Third Bank notifying him as a

pay on death beneficiary and that the funds were depleted[,]" Michael continued to deny that anyone from Fifth Third Bank ever contacted him.

### Ownership-during-lifetime presumption does not apply.

{¶21} In *Wright v. Bloom,* 69 Ohio St.3d 596, 607, 1994-Ohio-53, the Ohio Supreme Court stated the following regarding the ownership-during-lifetime presumption set forth in *Thompson, supra*:

> We stress, however, that today's decision does not change the ownership-during-lifetime presumption set forth in *Thompson, supra*, at paragraph one of the syllabus, utilized in determining the rights of the parties and others to joint and survivorship funds *in controversies arising during the parties' lifetimes*.

(Emphasis added.) Here, there is no controversy that arose during the parties' lifetime. It is undisputed, and in fact stipulated by the parties, that John never disputed Catherine's withdrawal of the funds during his lifetime. Additionally, Catherine testified that she, as a joint account holder, completed the withdrawal at her father's request. Therefore, the ownership-during-lifetime presumption that Michael asks this Court to apply is not applicable.

{¶22} Michael urges us to apply the Sixth District Court of Appeal's holding in *In re Estate of Mayer*, 105 Ohio App.3d 483, 485 (6th Dist.1995). In that case, our sister district stated that when the co-owner of the account transferred the funds out of the joint account to an account bearing only her name, that co-owner changed the joint and survivor nature of the account and "forfeit[ed] her survivorship rights to the funds[.]" However, as the trial court pointed out, the present case is factually dissimilar to that case. The Sixth District had previously stated in *In re Estate of Mayer*, 6th Dist. Lucas No. L 93-131, 1994 WL 50254, there was no evidence in the record that the deceased joint owner, who deposited all of the funds into the joint account, had any intent to give a present ownership interest to the other joint owner. The court determined the joint owner did not have the power to take money out of the account during the deceased joint owner's

lifetime. In this case, the record indicates that John knew Catherine was routinely taking money out of the joint account and transferring it into her personal account to pay his bills. Additionally, Catherine stated that she had John's permission, and the ability as a joint account holder, to use the money for her own personal benefit. As the trial court noted when granting summary judgment to Catherine:

> Joint and survivorship accounts are an estate planning vehicle allowing assets to pass outside of probate. As a general rule, [p]robate [c]ourts should always follow the intent of an estate plan, so the only conclusion this Court can draw is that it must allow Catherine to keep the funds.

Therefore, when John instructed her to withdraw the money for herself before his death, Catherine was honoring John's estate plan.

{¶23} Here, Catherine presented sufficient evidence to meet her burden for summary judgment. Catherine presented Civ.R. 56(C) evidence that she was a co-owner of the funds in the joint account and was authorized to withdraw the funds from the joint accounts when she made the withdrawal in question. Under *Dresher*, *supra*, we cannot say that Michael met his reciprocal burden to defeat Catherine's summary judgment claim. Thus, no genuine issue of material fact existed as to whether Catherine was able to withdraw the funds from the joint accounts, and she is entitled to summary judgment as a matter of law.

{¶24} Michael's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED IN DENYING MICHAEL DIPALMA'S MOTION FOR SUMMARY JUDGMENT.**

{¶25} Given this Court's resolution of the first assignment of error, Michael's second assignment of error is moot and we decline to address it. *See* App.R. 12(A)(1)(c).

III.

**{¶26}** Michael DiPalma's first assignment of error is overruled and his second assignment of error is moot. The judgment of the Summit County Court of Common Pleas, Probate Division is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

STEVENSON, J.
<u>CONCURS.</u>

CARR, J.
<u>CONCURS IN JUDGMENT ONLY.</u>


<u>APPEARANCES:</u>

SCOTT J. FRIEDMAN, Attorney at Law, for Appellant.

MARK B. WEISMAN, Attorney at Law, for Appellee.

GEORGE L. POULOS, Attorney at Law, for Appellee.