[Cite as *Gallogly v. Watson*, 2013-Ohio-3778.]

## IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### UNION COUNTY

MYRON GALLOGLY, ET AL.,

    PLAINTIFFS-APPELLEES/
    CROSS-APPELLEES,

                              CASE NO. 14-12-12

    v.

T. TODD WATSON, ET AL.,

    DEFENDANTS-APPELLANTS/
    CROSS-APPELLEES,
    -and-                           O P IN I O N

PAGE ENGINEERING INC.,

    DEFENDANT-APPELLEE/
    CROSS-APPELLANT.

Appeal from Union County Common Pleas Court
Trial Court No. 2010-CV-0309

Judgment Affirmed

Date of Decision: September 3, 2013

APPEARANCES:

    *Christopher R. Conrad* for Appellants/Cross-Appellees

    *Terrence Stolly and John D. Bodin* for Appellees/Cross-Appellees,
        Myron and Priscilla Gallogly

    *Dennis A. Schulze and Nichole M. Williams* for Appellee/Cross-
        Appellant, Page Engineering Co.

**SHAW, J.**

{¶1} Defendant-appellant-cross appellee Timothy Todd Watson ("Todd" or "Todd Watson"), successor trustee of the Roger L. Watson Trust, appeals the March 5, 2012, judgment of the Union County Common Pleas Court imposing a constructive trust upon the Gallogly residence and accompanying .7 acres for the benefit of Plaintiff-appellee Priscilla Gallogly ("Priscilla") following a bench trial. Watson and Defendant-appellant-cross appellant Page Engineering ("Page"), also appeal the same judgment entry designating the priority for distribution of proceeds from the foreclosure sale of the Gallogly residence, and the Gallogly property.

{¶2} For an initial overview of the voluminous record before this court, Myron Gallogly ("Myron") and Roger Watson ("Roger"), who were good friends and had a strong mutual trust in one another, agreed to develop property owned by Myron and Priscilla. The original agreement was that Myron would contribute the Gallogly property, excluding Priscilla Gallogly's residence, and manage the development, and Roger would provide the financing for the project. The idea was that the value of the Gallogly property would be commensurate with the amount of money Roger invested. Subsequently, Roger and Myron formed a corporation together, Oaks Development, Inc., with each owning 50%. Priscilla was not party to this agreement and had no ownership of Oaks Development.

{¶3} As development proceeded on the Gallogly property arrangements were also made with Page engineering for subdivision work on this project. Eventually, in order to move forward with the project, Roger and Myron had to acquire a letter of credit for just over $1,000,000. Roger, who had been funding the project per the agreement, was unable to obtain the further financing that he originally thought he would be able to obtain.

{¶4} After discussing the matter, Myron and Priscilla transferred the Gallogly property to the Roger Watson Trust so that Roger could obtain the letter of credit and further financing. Specifically, the bank that Roger and Myron were working with would not extend a letter of credit in the amount sought without Priscilla's residence being transferred to the Roger Watson Trust along with the Gallogly property. As a result, the Gallogly residence was transferred to Roger's trust along with the Gallogly property to be developed. However, at the time of the transfer assurances were made to Priscilla that Roger had no intention of taking Priscilla's residence, that the residence still remained hers, and that the transfer was just for "business purposes." Chief among those business purposes, aside from acquiring the letter of credit, was Roger obtaining the tax benefits from paying the mortgage. As Roger was already loaning money to Myron so that Myron could make the mortgage payments,[1] the plan was for Roger to assume the

---

[1] These "loans" were described as "draws" on future profits.

mortgages, make the mortgage payments and use the accompanying tax deductions, which Myron was unable to use due to his then-current lack of income.

{¶5} Thus the deed recording the transfer of the Gallogly property and Priscilla's residence to the Roger Watson Trust was recorded on June 4, 2007. Unfortunately, Roger died unexpectedly just over a month later. Todd Watson, Roger's son, assumed Roger Watson's position as trustee, and attempted to carry through with his father's wishes to fund the project. However, eventually that became financially impractical so the funding ceased and the Gallogly property and Priscilla's residence went into foreclosure leading to the filing of this action.

{¶6} On June 17, 2010, Myron Gallogly and Priscilla Gallogly filed a complaint against Todd Watson individually, Todd Watson as successor Trustee of the Roger L. Watson Trust, Richwood Bank, Oaks Development, Inc., and Page. (Doc. 2). The complaint was later amended, with leave of the court, on July 29, 2011, alleging eight counts against the same parties, including, *inter alia*, breach of fiduciary duty against Todd as trustee of the Watson Trust, imposition of a constructive trust, an implied vendor's lien against the subject property, quiet title of the subject property and unjust enrichment of the Watson Trust. (Doc.

102). Page Engineering and Todd each filed counterclaims against the appellees and crossclaims against each other.[2] (Docs. 103, 104).

{¶7} On December 20-21, 2011, the case proceeded to a bench trial. Just prior to the beginning of the trial, it was agreed by the parties that Page's claims for engineering work done on the project would be settled for the amount of $220,000, and that Page waived any defenses and crossclaims other than priority.

{¶8} The trial then commenced, at which Priscilla, Myron, and Mike Karcher of Richwood Banking Company testified in Myron and Priscilla's case-in-chief. At the conclusion of Myron and Priscilla's case, the claims against Todd Watson individually were dismissed. Then Todd presented his case as successor trustee, taking the stand himself, and also calling Justin Moeller, an accountant. Thereafter the case was submitted to the trial court for decision.

{¶9} On March 5, 2012, the trial court filed a 33-page judgment entry on the matter summarizing the extensive record, and making findings of fact and conclusions of law. (Doc. 153). In its entry, the trial court held, *inter alia*, that a constructive trust would be imposed upon Priscilla's residence and accompanying .7 acres for Priscilla, and that Priscilla was entitled to 21% of the proceeds from the foreclosure sale of the Gallogly property and Priscilla's residence as a result of

---

[2] Page claimed breach of contract against ODI and the Watson Trust, and that the Watson Trust was unjustly enriched. The Watson Trust claimed a breach of contract by Myron and unjust enrichment. Various filings were made by the remaining parties, but as they do not pertain to the case, they will not be addressed.

the constructive trust for her residence. (*Id*.) The basis of the trial court's holding was the court's finding that the parties never intended Priscilla's residence to be included in the project; rather, Priscilla's residence was transferred purely for the sake of obtaining financing.

{¶10} In its entry, the court also determined that the proceeds of the foreclosure sale of the Gallogly property and Priscilla's residence would be distributed first to the balance due to the Richwood Banking Company for the mortgages, then Priscilla's 21% representing the constructive trust for her residence, then Page's agreed upon $220,000, then the next $1,003,729.00 to Todd Watson, Trustee of the Roger Watson Living Trust representing the amount the Roger Watson Trust invested over Myron in the project, and any remaining balance paid to the Watson Trust and Myron Gallogly in a 50/50 ratio per their original agreement as investors in the Oaks. (Doc. 153).

{¶11} It is from this judgment that Todd Watson[3] and Page appeal, asserting the following assignments of error for our review.

> **TODD WATSON'S FIRST ASSIGNMENT OF ERROR**
> **THE TRIAL COURT ERRED BY IMPOSING A CONSTRUCTIVE TRUST IN PRISCILLA'S FAVOR, ESSENTIALLY RESCINDING THE DEED AS TO THE HOUSE, IN DIRECT CONFLICT WITH THE DEED'S UNAMBIGUOUS CONSIDERATION CLAUSE AND THE UNDISPUTED EVIDENCE IN THE RECORD.**

---

[3] Herein where "Todd" or "Todd Watson" is referenced, it is in his capacity as successor trustee of the Roger Watson Trust.

**TODD WATSON'S SECOND ASSIGNMENT OF ERROR**
**THE TRIAL COURT ERRED BY IMPOSING A CONSTRUCTIVE TRUST IN PRISCILLA'S FAVOR BECAUSE THE REAL ESTATE MARKET CRASH, NOT INEQUITABLE CONDUCT, CAUSED HER HARM.**

**TODD WATSON'S THIRD ASSIGNMENT OF ERROR**
**THE TRIAL COURT ERRED BY GIVING PRISCILLA'S AND PAGE'S INTERESTS PRIORITY WHEN THE TRUST HAS THE ONLY SECURED INTEREST AMONG THEM.**

**TODD WATSON'S FOURTH ASSIGNMENT OF ERROR**
**IF A CONSTRUCTIVE TRUST WAS AN APPROPRIATE REMEDY, THE TRIAL COURT ERRED IN HOW IT IMPLEMENTED THAT REMEDY.**

**PAGE'S ASSIGNMENT OF ERROR**
**THE TRIAL COURT ERRED IN CONCLUDING THAT PRISCILLA GALLOGLY'S 21% INTEREST IN THE SUBJECT PROPERTY IS SUPERIOR TO THE INTEREST OF PAGE ENGINEERING, INC.**

**{¶12}** For the sake of clarity, we elect to address some of the assignments of error together, and out of the order in which they were raised.

*Watson's First and Second Assignments of Error*

**{¶13}** In Todd's first and second assignments of error, Todd makes various arguments that the trial court's imposition of a constructive trust in Priscilla's favor was improper. Specifically, Todd argues that the deed to Priscilla's residence contained language that was unambiguous in stating that the property had been transferred for consideration making a constructive trust inappropriate, that there was no fraud or unjust enrichment on behalf of the Watson Trust, and

that Priscilla knowingly, intelligently, and voluntarily transferred her residence making a constructive trust inappropriate.

{¶14} In its judgment entry, the trial court set forth the following factual findings, which were stipulated to by the parties at trial, and which provide a more detailed summary of the evidence relied upon by the court in reaching its decision to impose the constructive trust in this case.[4]

> **1. The real estate at issue consists of land totaling approximately 64.4 acres, and is more particularly described in the Quit Claim Deed dated June 12, 2006. Joint Trial Exhibit J-1-A.**
>
> **2. The aforementioned real estate was owned in fee simple by the Gallogly Qualified Personal Residence Trust dated January 1, 2001, Priscilla Gallogly, Trustee, and is referred to as the "Gallogly Property".**
>
> **3. In 2005, Myron Gallogly (Priscilla's husband, "Myron") and Mr. Roger L. Watson of Bellefontaine, Ohio ("Roger" or "Roger Watson") had general discussions concerning the development of the Gallogly Property as a single-family residential development.**
>
> **4. On January 10, 2006, Myron Gallogly and Roger Watson executed an agreement which outlined the general terms of the project (the "Agreement"), the general terms of which included the following:**
>
> **A. single-family home lots would be developed and sold in phases, except that the Galloglys' residence and an approximate 0.7 acre lot upon which it sat would be retained by Priscilla Gallogly remain [sic] with the Priscilla Gallogly Residential Trust, Priscilla Gallogly Trustee;**

---

[4] These stipulations were read into the record at trial, and were submitted to the court as "Agreed Stipulation of Facts" via a document the court accepted as an exhibit of the court. (Tr. at 9-15).

**B. income expenses of the development would be shared equally by Myron Gallogly and Roger Watson, and should they decide to form a legal entity for the development, the two men would each own 50% of such entity;**

**C. Galloglys would contribute the land and management services, while Roger Watson would facilitate financing for the project; and**

**D. The then-existing mortgages to Defendant Richwood Banking Co. on the Gallogly Property would remain the liability of Myron Gallogly.**

**5. On or about May 16, 2006, Myron Gallogly and Roger Watson filed Articles of Incorporation to form Defendant The Oaks Development, Inc. ("ODI"), an Ohio for-profit corporation, with Myron and Roger each owning 50% of that corporation.**

**6. Myron and Roger Watson, through ODI, began the development process for The Oaks subdivision, including seeking subdivision approval from the City of Marysville, Ohio and retaining various professional services, including among others, the engineering services of Defendant Page Engineering, Inc.**

**7. On May 16, 2007, Defendant Richwood Banking Co. obtained an appraisal for the Gallogly Property, as developed, based upon 43.981 acres of development land, 20 developed lots, and existing Gallogly residence and lot, at an estimated value of $2.6 million ($2,600,000).**

**8. With this information, Roger and Myron reached a more detailed, revised agreement for the project, which included, at least, the following terms:**

**A. Myron Gallogly and Roger Watson agreed that $1.3 million would be the value of the land contributed to the Project; and**

**B. The existing first and second mortgage payments to Richwood Banking Co. would be booked as loans to Myron Gallogly; and [sic]**

**9. On May 26, 2007, a closing to transfer the Gallogly Property was held at Defendant Richwood Banking Co.'s Offices.**

**10. On May 23, 2007, Roger Watson executed a mortgage Assumption Agreement whereby he agreed, individually and as Trustee of the Watson Trust, to assume with Myron Gallogly, the debt payments on the existing first and second mortgages on the Gallogly Property which had a then combined balance of $455,566.62.**

**11. Priscilla Gallogly executed a warranty deed to transfer title of the Gallogly Property to the Watson Trust.**

**12. This deed was recorded on June 4, 2007.**

**13. By June 1, 2007, phase 1 of The Oaks subdivision P.U.D. and plat was approved by the City of Marysville, consisting of 21 lots, and the Declaration of Covenants, Easements, Restrictions, Assessments, and Assessment Liens for the Oaks subdivision was recorded against the Gallogly Property in the office of the Union County Recorder.**

**14. An initial loan of $200,000 was obtained on August 3, 2005 from Richwood Bank prior to the January 2006 agreement between Myron and Watson.**

**15. A second loan of $100,000 was obtained in January 2006 from Richwood Bank.**

**16. In early 2007, Roger Watson obtained two personal loans for the principle purpose of funding the Oaks Project, using Roger Watson's personal assets as collateral.**

**17. Roger Watson's first personal loan was obtained on May 3, 2007 from the People Savings Bank in the amount of $615,200.**

**18.   Roger Watson's second personal loan was obtained on June 29, 2007 with Citizens Federal Savings & Loan in the amount of $1,000,000.**

**19   On July 14, 2007, soon after returning from his out-of state trip, Roger L. Watson died unexpectedly.**

**20.   Defendant Timothy Todd Watson was thereafter appointed Successor trustee of the Roger Watson Trust.**

**21.   On January 6, 2009, Todd Watson cancelled a listing agreement which Myron Gallogly had signed, as the Property's alleged owner, with Coldwell Banker to sell the lots.**

**22.   After the Watson Trust stopped making payments to Richwood Bank, Myron Gallogly paid the real estate taxes for the house and lot and the mortgage payments for the Gallogly Property to Richwood Banking Co., the total amount of which is in dispute.**

**23.   Roger Watson and the Watson Trust contributed a total of $2,032,612 to the project.  This does not include a loan from Grand Rental Station.**

**24.   Priscilla Gallogly is not a shareholder in the Oaks Development, Inc.**

**25.   Priscilla Gallogly was not a beneficiary of the Roger Watson Trust.**

**26.   The parties have reached agreement to settle Page's claims in the amount of $220,000.  * * * Court determines priority. Defendant waives any defenses and cross claims other than priority.[5]**

---

[5] The preceding 25 stipulations were all submitted via a typed sheet for the court and acknowledged by the parties in open court after the stipulations were read into the record.  The final stipulation/agreement was not part of the document with the other stipulations, but both parties did agree to this stipulation in open court.

{**¶15**} In *Estate of Cowling v. Estate of Cowling,* 109 Ohio St.3d 276, 280-81, 2006-Ohio-2418, the Ohio Supreme Court defined a constructive trust as a

> **trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. It is raised by equity to satisfy the demands of justice.**

*Cowling* at ¶ 18, citing *Ferguson v. Owens*, 9 Ohio St.3d 223, 225, (1984), quoting 76 American Jurisprudence 2d (1975) 446, Trusts, Section 221. A constructive trust is considered a trust because "'[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.'" *Cowling,* 2006-Ohio-2418, at ¶ 18, citing *Ferguson,* 9 Ohio St.3d at 225, quoting *Beatty v. Guggenheim Exploration Co.*, 122 N.E. 378 (1919). "In applying the theories of constructive trusts, courts also apply the well-known equitable maxim, 'equity regards [as] done that which ought to be done.'" *Ferguson,* 9 Ohio St.3d at 226.

{**¶16**} The party seeking to have a constructive trust imposed bears the burden of proof by clear and convincing evidence. *Cowling*, *supra*, at ¶ 20, citing *Univ. Hosps. of Cleveland, Inc. v. Lynch,* 96 Ohio St.3d 118, 2002-Ohio-3748, paragraph three of the syllabus. The standard of "clear and convincing evidence"

is defined as "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. *Ford v. Osborne*, 45 Ohio St. 1 (1887) paragraph two of the syllabus.

{¶17} In this case, the trial court held the following with regard to the imposition of the constructive trust for Priscilla Gallogly's benefit:

> **The Court finds under the circumstances of the instant matter that an equitable remedy is appropriate to place the parties in the position for which they bargained for in their agreement regarding the Project. All parties substantially performed under the agreement until the Watson Trust reasonably ceased funding the fledgling Project. The Court finds that the original parties to the agreement, Roger Watson and Myron Gallogly, intended for the ownership of the Gallogly residence and .7 acre lot to be vested in Priscilla Gallogly. In the efforts to obtain financing and funding for the Project, the subject property in its entirety was transferred to the Watson Trust as this was the only way that the parties found to obtain such financing. Despite the transfer, the Court finds that the intent for the ownership of the Gallogly residence and .7 acre lot to be vested in Priscilla Gallogly did not change. *The Court finds that it would be against the principles of equity to allow the entire property to be retained by the Watson Trust and therefore that a constructive trust be imposed for the benefit of Priscilla Gallogly.***

(Emphasis Added.) (Doc. 153).

{¶18} The trial court thus found that although Priscilla's residence was transferred to the Roger Watson Trust, the parties never intended the residence to be part of the project. It is clear, and undisputed, that Myron and Roger had this understanding at the inception of their agreement. On January 10, 2006, Myron and Roger executed an agreement which outlined the general terms of the project, which stated that:

> **Myron Gallogly and Roger L. Watson wish to become partners in a project hereafter referred to as "The Oaks".**
>
> **The Oaks Project is defined as the development and sale of 64 acres more or less at 14180 State Route 38, Marysville, Ohio 43040,** *less the house and a lot of approximately .7 acre.*
>
> *The house and lot remain with the residential trust (Pricilla Gallogly, trustee) and the current 1st and 2nd mortgage of approximately $500,000.00 remains the liability of Myron Gallogly.*
>
> **It is intended that all income and expenses of The Oaks be equally shared by Myron Gallogly and Roger Watson. Should the partners decide to form a legal entity, the documents would reflect 50% Myron Gallogly and 50% Roger Watson.**
>
> **Myron Gallogly provides the land and management and Roger Watson will facilitate the financing.**
>
> **It is intended to phase the project to minimize exposure and utilize proceeds to accomplish future phases.**
>
> * * *

(Emphasis Added.) (Joint Ex. 10).[6]

{¶19} Following the agreement, the parties proceeded with development of the Gallogly property under the continued understanding that Priscilla's residence was not part of the project, and that Roger Watson was to provide financing for the project. (Dec. 20, 2011, Tr. at 81); (Dec. 20, 2011, Tr. at 60). As part of that financing, Roger loaned Myron money against future profits so that Myron could pay the mortgages on the Gallogly property and Priscilla's residence.

{¶20} During development of the Gallogly property, a letter of credit in excess of $1,000,000 was required to continue, and Roger was unable to secure further financing as he originally thought he would, so Myron and Roger negotiated an agreement whereby the Gallogly property would be transferred to Roger so that Roger could obtain the requisite letter of credit and financing in exchange for a $1.3 million note. The bank informed Myron and Roger that it would not issue a letter of credit unless Priscilla's residence was involved as well, so Myron and Roger spoke with Priscilla about transferring the residence to the Roger Watson Trust along with the land. However, according to Myron, when Myron discussed the matter with Roger, it was not intended to place the equity in

---

[6] It is not disputed that that at the time of originally making this deal title to the residence and the accompanying land to be developed was held by the Gallogly Qualified Personal Residence Trust, with Priscilla Gallogly as trustee. Subsequently, the land and residence were transferred to Priscilla Gallogly on June 12, 2006. *See* (Joint Ex. 1).

the residence in the project, Myron testified that he would not have signed the deed if it was supposed to be collateral for the project. (Dec. 20, 2011, Tr. at 85).

{¶21} Priscilla testified that Myron and Roger first approached her and asked her to transfer the residence approximately a week or two before the ultimate transfer. (Dec. 20, 2011, Tr. at 192). According to Priscilla, when Roger and Myron spoke to her about transferring her residence to the Roger Watson Trust, she had reservations as she did not want to lose her home. (Dec. 20, 2011, Tr. at 193). However, Priscilla testified that Myron and Roger told her that Roger needed the residence for financing and tax deductions. (Dec. 20, 2011, Tr. at 193). Priscilla and Myron testified at trial that Roger made assurances to Priscilla that the transfer was only so Roger and Myron could obtain further financing, and so that Roger could take the tax deductions for paying the mortgages he was effectively already paying by loaning Myron the money (against future profits) to pay them. According to Priscilla, at closing, Roger said directly to her that he wanted her to understand he was not taking her house, and that the transfer was just for business reasons. (Dec. 20, 2011, Tr. at 195).

{¶22} Priscilla testified that Roger also informed Priscilla he would give her the previously discussed $1.3 million note for the Gallogly property upon his return from his pending vacation.[7] With these assurances, and because Priscilla

---

[7] This note appears as though it was prepared but never signed by Roger Watson prior to his death.

and Myron trusted Roger, with Priscilla testifying that she specifically trusted Roger "to do what was right," Priscilla transferred the deed for her residence over to the Roger Watson Trust and that deed was recorded on June 4, 2007. (Dec. 20, 2011, Tr. at 222).

**{¶23}** Subsequently, on June 25, 2007, Roger prepared a letter for Myron just prior to Roger going on vacation to summarize where the two were at in their development deal, which stated, in part, as follows:

\* \* \*

**I have developed some summary sheets right after we closed on the 26ᵗʰ. Please go over these. If there is something you don't understand we will discuss it.**

**The first sheet shows $1,300,000 for the farm, payments to you so far and the assumption of debt on the house, the additional loan and the $10,000 I loaned you earlier. *As you know the house I consider yours* and anything over and above the payoff you get will be yours and add back to your note due The Oaks.**

\* \* \*

(Emphasis Added.) (Joint Ex. 11). Roger then took a vacation, and unfortunately died unexpectedly upon return, on July 14, 2007.

**{¶24}** The trial court relied on the foregoing evidence to establish that throughout the development, from the beginning until Roger's death, Priscilla's residence was never intended to actually be part of the project. Roger's letter, written shortly before he died, seems to make clear that even after the deed to

-17-

Priscilla's residence had been transferred to the Roger Watson Trust, Roger considered the Gallogly property and Priscilla's residence separately. Roger specifically stated in the letter that he considered the house Priscilla's, and addressed the house separately from the $1.3 million that would be "for the farm." Although Todd Watson suggests on appeal that this letter could be read to have a different meaning, certainly the trial court could validly read this as consistent with Priscilla's residence never being intended to be in the project.

{¶25} Thus the record contains a consistent trail of evidence that the trial court could rely upon establishing that Priscilla's residence was never intended to be part of the project from its inception to after the transfer. It is undisputed that Priscilla's residence was not intended to be part of the project at the inception of the project, and there is clear and convincing evidence to support the finding that Priscilla's residence was not intended to be part of the project when she signed the deed over to the Roger Watson Trust, especially when considering Roger's letter weeks prior to his death.

{¶26} To argue against the imposition of the constructive trust by the trial court based on these facts, Todd first claims that a general warranty deed was transferred and that the deed stated it was transferred for valuable consideration. Todd claims the deed constituted a novation to the original understanding and that therefore the deed should control. However, the trial court weighed all of the

evidence and determined by clear and convincing evidence that a constructive trust was appropriate in this case.[8] Notably, the deed is the *only* evidence in the record to indicate that the parties ever had an intention other than Priscilla's residence remaining hers, and that indication is specifically rebutted in Roger's letter.

**{¶27}** Next, in arguing against the imposition of the constructive trust, Todd claims that the trial court did not explicitly find any unjust enrichment in its judgment entry. Todd correctly argues that for a constructive trust to be imposed unjust enrichment or fraud has to be found. *Cowling*, *supra*, at ¶ 19. Todd contends no fraud was alleged in the complaint and that unjust enrichment was specifically rejected by the trial court in its judgment entry. Unjust enrichment was discussed at an earlier point in the trial court's judgment entry, prior to the trial court's discussion of the constructive trust, and rejected; however, this portion of the trial court's judgment entry pertained only to the Gallogly's breach of contract claim.

**{¶28}** In the trial court's judgment entry where the court discusses its imposition of a constructive trust, the court outlines the standards for finding a constructive trust. As part of that analysis, the court stated, "[t]he constructive trust is an equitable remedy that protects not only against fraud, but also unjust

---

[8] Appellees also contend that valuable consideration was actually not transferred as Roger never signed the promissory note.

enrichment, 'where *it is against the principles of equity that the property to be retained* by a certain person even though the property was acquired without fraud.' (Emphasis Added.) (Doc. 153) quoting *Cowling*, *supra*, at ¶ 19, quoting *Ferguson*, *supra*, at 226. The trial court thus cited recognized standards of the Ohio Supreme Court in *Cowling* and *Ferguson* to impose a constructive trust, standards which clearly contain the concept of unjust enrichment.

{¶29} Following the trial court's analysis of the standards it had laid out for imposing a constructive trust, the court then specifically stated, "[t]he court finds that *it would be against the principles of equity to allow the entire property to be retained* by the Watson Trust and therefore that a constructive trust be imposed for the benefit of Priscilla Gallogly." (Emphasis Added.) (Doc. 153). A comparison of the trial court's language used in its findings to the standards and requirements of the Ohio Supreme Court for imposing a constructive trust clearly shows that the trial court utilized the Ohio Supreme Court's language from *Cowling*, and *Ferguson* in making its decision.

{¶30} In sum, while the exact phrase "unjust enrichment" was not used in the trial court's official "finding," the language the trial court did use precisely mirrors the required findings for a constructive trust. Therefore, we cannot find that the court's failure to use the phrase "unjust enrichment" in its finding warrants reversal.

{¶31} Based upon all the evidence, we find that there was competent credible evidence to support the trial court's imposition of a constructive trust for the benefit of Priscilla Gallogly.

{¶32} Accordingly, Todd Watson's first and second assignments of error are overruled.

*Watson's Fourth Assignment of Error*

{¶33} In Todd's fourth assignment of error, he argues that if the constructive trust was an appropriate remedy, the trial court erred in how it implemented the constructive trust. Specifically, Todd argues that constructive trusts attach to assets, not values, and that the trial court should have factored in the mortgage debt when determining Priscilla's residence's value.

{¶34} In the trial court's judgment entry, the trial court conducted the following analysis, and made the subsequent findings, when determining Priscilla's interest to be covered by the constructive trust.

> **The Galloglys request that the constructive trust be for 21% of the current fair market value, if not for the $350,000.00 valuation at the time of transfer. By the property values Priscilla Gallogly is entitled to 21% of the subject property, determined by adding the value of the Gallogly residence and .7 acre lot ($350,000.00) to the value of the residue ($1,300,000.00), then dividing the value of the Gallogly residence and .7 acre lot ($350,000.00) by that sum ($1,650,000.00). * * * The Court finds that inherent in the transfer of the subject property is some risk of loss despite the intent of Roger Watson and Myron Gallogly and as such Priscilla Gallogly should share partially in the loss as a result of the failure of the Project.**

**It is therefore ORDERED, ADJUDGED AND DECREED that a constructive trust be imposed upon the subject property for the benefit of Priscilla Gallogly in the amount of 21% of the net proceeds of the foreclosure sale *after* payment of court costs and the amount due and owing to the Richwood Banking Company.**

(Emphasis Added.) (Doc. 153).

**{¶35}** Todd's first argument that the trial court's computation was improper is that constructive trusts attach to assets rather than values. The Ohio Supreme Court held in *Estate of Cowling v. Estate of Cowling*, *supra*, 109 Ohio St.3d 276, 2006-Ohio-2418, that

**[a] claimant seeking the imposition of a constructive trust must specify the particular property over which the constructive trust is to be placed. If the form or possessor of the property over which the constructive trust should be placed changes during a lawsuit, the claimant should be given an opportunity to conduct discovery, if necessary, and present evidence of the new location or form of the property over which the trust should be placed.**

*Cowling*, at ¶ 24. Here Priscilla's residence, along with the Gallogly property, was in the process of going through foreclosure at the time of the trial, and the trial court traced the property back to Priscilla Gallogly and imposed the constructive trust over her financial interest in her residence relative to the accompanying land as a whole. In this case, the "assets" are the identifiable proceeds derived from the pending foreclosure sale of Priscilla's residence, over which the constructive trust was imposed. Consequently, there is clear and convincing evidence to support the

trial court's tracing. Accordingly, we do not find that the trial court erred in this aspect of its implementation of the constructive trust.

{¶36} In Todd's second argument under this assignment of error, Todd argues that the trial court erred in its computation of the value of Priscilla's interest covered by the constructive trust. Todd claims that the trial court did not appropriately factor in the mortgages as they pertained to Priscilla's residence, and that therefore her interest should have been lower.

{¶37} As is made clear by the trial court's holding above, the mortgages on the entire property are to be paid out of proceeds from the foreclosure sale, as well as the court costs, *before* Priscilla receives her 21%. Thus Priscilla will effectively be "paying" her share of the mortgage relative to the property as a whole, as she is only getting 21% of the *net proceeds of the foreclosure after the mortgages are paid off*, not 21% of the property value before the mortgages are paid off. This computation establishes that the trial court did, in fact, consider the mortgages and Priscilla's obligation to pay her share. Accordingly, we find that there is clear and convincing evidence to support the decision made by the trial court. Therefore, Todd's fourth assignment of error is overruled.

*Watson's Third Assignment of Error and*
*Page's Assignment of Error*

{¶38} In Todd's third assignment of error, and Page's assignment of error, Todd and Page contest the trial court's determination of priority distribution of

funds from the foreclosure sale. Specifically, Todd argues that the Watson Trust should have priority over all but the bank's mortgages on the Gallogly property and Priscilla's residence. On the other hand, Page argues that it should have priority over all but the bank's mortgages on the Gallogly property and Priscilla's residence.

{¶39} Regarding priority, the trial court held the following:

**It is therefore ORDERED, ADJUDGED AND DECREED that after payment of court costs, taxes, and the balance due to the Richwood Banking Company, the remaining net proceeds of the foreclosure sale shall be distributed as follows:**

**a. The first 21% to Priscilla Gallogly;**
**b. The next $220,000 to Page Engineering**
**c. The next $1,003,729.00 to Todd Watson, Trustee of the Roger Watson Living Trust; and**
**d. Any remaining balance paid to the Watson Trust and Myron Gallogly in a 50/50 ratio.**

(Doc. 153).

{¶40} At the outset, we would note that the constructive trust imposed would not have any practical effect in protecting Priscilla's interest if she was not given priority over Todd. We have already found that there was clear and convincing evidence to support the trial court's finding that a constructive trust should be imposed for Priscilla's benefit. Moreover, we see nothing in the record illustrating that Todd's interest was somehow secured or should be superior in any other way to Priscilla's interest in her residence.

{¶41} As to Page's priority, the trial court found that "Page Engineering does not have an interest in the Gallogly residence and .7 acre lot portion of the subject property; therefore, its interest is only in the remaining portion of the subject property." (*Id.*) The record supports the trial court's determination. In this case, Page engineering did work on the Gallogly property that was part of the project, and Page expected to be compensated for it. Nowhere in the record is there any indication that Page ever had any interest in Priscilla's residence, or that Page did any work on Priscilla's residence. Thus Page would have no claim on Priscilla's residence, as the trial court found, and we do not find that the trial court erred in determining that Page's interest was subordinate to Priscilla's in the proceeds of the foreclosure sale.

{¶42} It remains for us to determine whether the trial court correctly determined that Page's interest in the foreclosure proceeds was superior to Todd's. In making its determination, the trial court reasoned that, "whether or not Page Engineering is a creditor or an investor Page Engineering's interest in the subject property is superior to the other investors of the Project, those being Roger Watson/the Watson Trust and Myron Gallogly as shareholders in ODI." (Doc. 153).

{¶43} On appeal, both Todd and Page argue each should be ahead in priority over the other. Todd claims that he was somehow a "secured" creditor

and Page claims priority over Todd as a creditor over an investor. The trial court weighed the evidence and found that Todd was not a creditor and his interests were subordinate to Page's regardless of whether Page was an investor or a creditor.[9]

{¶44} We would further note that the record would support a determination that Page was a creditor, as the parties agreed and stipulated that Page was owed $220,000.00 for the work it performed on the Gallogly property, certainly taking Page out of the realm of an investor. As a creditor, Page would certainly take over Todd as an investor and thus the trial court's decision would be correct. However, even if Page and Todd were both construed as investors, the trial court's discretionary decision is supported by the record and we will not simply substitute our judgment for the trial court's judgment on this point.

{¶45} Accordingly, Watson's third assignment of error and Page's assignment of error are overruled.

{¶46} For the foregoing reasons Watson's and Page's assignments of error

---

[9] The argument that Page was an investor rather than a creditor stems from Page's original agreement in the project. Evidence indicated that Page originally agreed to forgo receipt of payment for its work on the project for a period of years in exchange for double its regular fee. Even if this made Page an investor, that characterization would be altered when the parties later agreed that Page was owed a flat-fee of $220,000 for its work on the project.

are overruled and the judgment of the Union County Common Pleas Court is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, J., concurs in Judgment Only.**

**ROGERS, J., DISSENTS.**

**{¶47}** I must dissent from the opinion of the majority. Once again this court has chosen to ignore the finality and sanctity of formally executed documents; in this case a warranty deed. *See Neville v. Neville*, 3d Dist. Marion No. 9-08-37, 2009-Ohio-3817, ¶ 36 (Rogers, J., concurring in part and dissenting in part) ("I find it troubling the lack of importance placed upon the formally executed deed of the parties."). The Galloglys (yes, both husband and wife) made a business decision to formally transfer their property to the Watson Trust. That transfer enabled Roger to obtain a loan that was necessary for the Oaks Development to proceed. Personal assurances aside, the property development could not continue without the letter of credit Watson needed to obtain a loan, which was intended to benefit both Watson and the Galloglys' business venture. At that point in time, Roger was also making the mortgage payments on the Gallogly property. It is unfortunate that Roger died shortly after the loan was

executed. However, his death may or may not have contributed to the failure of the development.

**{¶48}** But more importantly, all that is immaterial to the issues in this case. A properly executed deed may only be set aside upon a showing of lack of capacity, fraud, or undue influence, and the burden of proof is by clear and convincing evidence. *Household Fin. Corp. v. Altenberg*, 5 Ohio St.2d 190 (1966), syllabus. None of these circumstances have been alleged, let alone proven by any evidentiary standard. Priscilla contributed her property to her husband's business venture and must be allowed to suffer the consequences. She might have tried to protect herself through additional written agreements, although such a collateral agreement may not have been acceptable to the loaning institution, and the development might have stopped there. The choice was made to indenture the property without recourse.

**{¶49}** As to the issue of a constructive trust, this court cannot rationally find unjust enrichment of the Watson Trust when the Galloglys benefited from the business venture proceeding due to the loan obtained by Watson. Priscilla effectively made herself a silent partner in the Oaks Development by her transfer of the real estate and has no rights except those properly executed in writing, and obviously there are none. Therefore, I would find that Priscilla has no interest in

the subject property and the trial court erred in both imposing a constructive trust and giving Priscilla priority over Todd Watson and Page Engineering.

{¶50} As to Page Engineering, it is an unsecured creditor of Oaks Development, and has no rights except as to Oaks Development. Consequently, the trial court erred in giving priority to Page Engineering over Todd Watson. Nevertheless, Page Engineering should have been given priority over Priscilla, who, as stated above, did not have any interest in the subject property.

{¶51} Accordingly, I would sustain Todd Watson's first, second, and third assignments of error, as well as Page's assignment of error. Moreover, I would find that the resolution of Todd Watson's first and second assignments of error rendered his fourth assignment of error moot.

{¶52} Since the majority today has failed to uphold the permanence of warranty deeds, it has failed to properly determine the priorities of the parties involved in this matter. As such, I respectfully dissent.

**/jlr**